# EXHIBIT

# 3

APPENDIX C.1



## RADIO-CONTROLLED HELICOPTER AGREEMENT

THIS RADIO-CONTROLLED HELICOPTER AGREEMENT ("Agreement"), is made and entered into as of the 1st day of September, 2001, by and between Rehco, L.L.C., having its principal office at 1300 West Washington Boulevard, Chicago, Illinois 60607 (hereinafter referred to as "Rehco"), and Spin Master Toys, having its principal office at 450 Front Street West, Toronto, Ontario M5V 1B6 Canada (hereinafter referred to as "Spin Master") and collectively referred to as the "Parties."

WHEREAS, Spin Master is in the business of manufacturing and selling toys, games and gifts;

WHEREAS, Rehco has developed a preliminary mockup of the Item described herein and has delivered to Spin Master a videotape demonstrating it; and

WHEREAS, Spin Master desires to engage Rehco to complete development of the Item described herein and obtain a license on the Item for distribution on a worldwide basis; and

IT IS HEREBY AGREED THAT:

1. **THE ITEM.**

    1.a. Rehco believes it is the owner of the rights to an item, hereinafter referred to as the "Item," described as follows:

    A motorized helicopter toy having a launching base whereby the launching base may function both to charge the batteries in the helicopter and to energize the propeller to sufficient RPM's required for launch. The launching base has batteries and a timer circuit for charging the helicopter and may have a motor for energizing the propeller. The helicopter consists of an airframe, the motorized means for spinning the propeller, the means for protecting the ends of said spinning propeller, and the means for correcting counter-rotation and pitch variations. The helicopter may have several forms of control, starting with no control or "free flight," or it may be outfitted with electronics having a microprocessor for "preprogrammed" or "programmable" flight or it may be outfitted with a radio receiver for use with a hand held remote transmitter or it may be any combination of the above. The helicopter may or may not take the



  form of "traditional" helicopter styling and the technology used to make the item fly could be used in other flying toys that are unidentified at this point.

1.b.   The Item is currently being referred to as "Radio-Controlled Helicopter."

1.c.   Any improvement, modification, enhancement or derivation of the Item during the term of the License granted by this Agreement, regardless of how or by whom such improvement, modification, enhancement or derivation is made, will be deemed to be included within the scope of the rights, obligations and reversion provisions of this Agreement, except for Rehco's representations and warranties. As of the date of this Agreement, Spin Master is contemplating developing or having developed for it a free flight version and a hobby version of the Item. Nothing in this Agreement shall be construed as requiring Spin Master to develop those or any other versions of the Item.

2. **DEFINITIONS.**

For the purposes of this Agreement:

2.a.   "Advance Payment" means $25,000.00.

2.b.   "Affiliate" means

  2.b.i.   any person or entity that owns, controls or possesses at least 50% of the legal or beneficial interest of a Party to this Agreement, as well as

  2.b.ii.   any other entity that is at least 50% owned, controlled or possessed by persons or entities that own, control or possess at least 50% of the legal or beneficial interest of a Party to this Agreement.

2.c.   "Close-Out Sale" shall mean any sale of the Licensed Products at a net selling price of less than of 70% Spin Master's usual price to its customers, and made solely in contemplation of ceasing sales of the Licensed Products and solely resulting in the liquidation of an existing inventory of the Licensed Products.

2.d.   "Collateral Rights" shall mean the rights to use or reproduce the concept, graphic representation or promotion of the Item or the Licensed Products in services or in works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

2.e.   "Direct to Consumer Sales" means sales of the Licensed Product made direct to the consumer by Spin Master, or a Subsidiary or Affiliate of Spin Master, through the Internet, through a direct-to-consumer catalog or through any other technology or method which allows direct sales to consumers that does not involve a wholesaler or a retailer.

2.f. "Direct to Consumer Sales Price" means the invoice price of the Licensed Product sold through Direct to Consumer Sales, less accepted and credited product returns.

2.g. "Licensed Products" means merchandise based upon, derived from or embodying the Item, including but not limited to merchandise based upon, derived from or embodying the Item's means for controlling the horizontal stability of the helicopter.

2.h. "Licensed Territory" shall mean the entire world.

2.i. "Net Wholesale Selling Price" shall mean the gross wholesale selling price on all sales of the Licensed Products after deductions for freight allowances, taxes, commissions, bad debts, returns which are accepted and credited by Spin Master, markdown allowances and customary trade discounts. In no event shall the foregoing deductions (excluding returns which are accepted and credited by Spin Master) from the gross wholesale selling price exceed 8% of the gross wholesale selling price in any one quarter.

2.j. "Royalty Rate" shall mean 3.0%. This Royalty Rate shall not be reduced for any reason, including any requirement of Spin Master to pay royalties on sales of the Licensed Products pursuant to a third party character, trademark, copyright, logo, or image license.

2.k. "Subsidiary" shall mean any corporation or other entity which a Party to this Agreement controls, or of which such Party owns, controls or possesses at least 50% of its legal or beneficial interest.

3. **REHCO'S WARRANTIES.**

3.a. Rehco represents and warrants that it has granted no other licenses on the Item.

3.b. Rehco represents and warrants that it is not engaged in any litigation or conflict of any nature whatsoever involving the Item or the rights granted by this Agreement.

3.c. Rehco represents and warrants that all development of the Item is of United States of America origin.

3.d. Rehco represents and warrants that the Item was independently conceived by Rehco and/or one or more of its Affiliates.

3.e. Rehco represents and warrants that the Item as submitted by it to Spin Master does not infringe the rights of any third party.

3.f. Spin Master shall make reasonable efforts to ensure that sales of the Item and the Licensed Products infringe on no patent or intellectual property rights of another person or entity.

APPENDIX C.1

4. **FURTHER DEVELOPMENT OF THE ITEM.**

   4.a. Spin Master shall pay Rehco the costs of any further development or prototyping of the Item, including but not limited to development of production designs, improvements, modifications or enhancements of the Item or the Licensed Products, performed by Rehco or by an Affiliate of Rehco at their usual and customary rates and charges. Spin Master shall pay such costs within 45 days of the submission of invoices for such costs. Nothing herein shall affect Spin Master's obligations with respect for invoices submitted by Rehco prior to the execution of this Agreement.

   4.b. Nothing herein shall prohibit Rehco and Spin Master from entering into a separate agreement for any development or prototyping at any time in the future.

5. **GRANT OF LICENSE.**

   5.a. Rehco hereby grants to Spin Master:

   5.a.i. the sole and exclusive right within the Licensed Territory to manufacture, to have manufactured for it, to use, to sell, to distribute and to have distributed for it and to in any other manner exploit the Item, the Licensed Products and the subject matter of all patents and patent applications filed or to be filed on the Item and the Licensed Products;

   5.a.ii. the sole and exclusive right within the Licensed Territory to use, sublicense and to in any other manner exploit the Collateral Rights; and

   5.a.iii. these grants of rights shall collectively be referred to as the "License."

   5.b. Spin Master may change the form of the Item and the Licensed Products and to produce and sell them under the new form. Spin Master shall provide Rehco with samples of any new form of the Item or the Licensed Products upon their production or sale. All of the provisions of this Agreement except for Rehco's representations and warranties shall apply to the new form of the Item or the Licensed Products, including but not limited to those relating to the reversion of the rights granted by this Agreement upon termination of the License, if any.

   5.c. All rights granted by the License shall revert to Rehco upon the termination of the License, subject to the terms of this Agreement.

   5.d. Rehco shall make no agreement with any third party that is inconsistent with the terms and conditions of this Agreement.

6. **SUBLICENSES.**

   6.a. With the consent of Rehco, which consent shall not be unreasonably withheld, Spin Master may grant sublicenses on the Item, Licensed Products or the Collateral Rights within the Licensed Territory. All such sublicenses shall be

Page 4 of 4
RADIO-CONTROLLED HELICOPTER AGREEMENT

upon terms and conditions that are consistent with the terms and conditions of this Agreement. All such sublicenses shall terminate upon the termination, if any, of the License granted to Rehco by this Agreement.

6.b. Spin Master shall pay to Rehco 50% of all royalties received by Spin Master from any sublicense of the Item, Licensed Products or the Collateral Rights within forty-five days of their receipt.

6.c. Spin Master shall provide Rehco with copies of any sublicense agreements or royalty reports relating to the Item, Licensed Products or the Collateral Rights sublicensed within forty-five days of their execution or receipt.

6.d. The obligations and the covenants of the Parties to this Agreement under this Article 6 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

7. **ROYALTIES**.

7.a. Rehco acknowledges receipt of the Advance Payment from Spin Master, which will be credited against future royalty payments, if any, to be made by Spin Master to Rehco pursuant to this Agreement. The Advance Payment is nonrefundable.

7.b. Except as otherwise provided by this Agreement, Spin Master shall pay Rehco a royalty at the Royalty Rate on the Net Wholesale Selling Price of all sales by Spin Master and its Subsidiaries or Affiliates of the Licensed Products. The dollar amount of the royalty to be paid to Rehco on sales of the Licensed Products to Spin Master's Subsidiaries or Affiliates shall be deemed to be the dollar amount paid on sales of the Licensed Products to unaffiliated customers, regardless of the actual Net Wholesale Selling Price to Spin Master's Subsidiaries or Affiliates.

7.c. Spin Master shall pay Rehco a royalty at the Royalty Rate on the Direct to Consumer Sales Price on all Direct to Consumer Sales.

7.d. No royalties shall be paid on Items or Licensed Products that Spin Master may distribute in the ordinary and usual promotion, development and exploitation of its business for review, sample, advertising or publicity.

7.e. No royalties shall be paid on Close-Out Sales if and only if Notice of the commencement of such Close-Out Sales is given to Rehco pursuant to the Notice provisions of this Agreement within thirty days of the commencement of such sales.

7.f. Spin Master shall, within forty-five days following the end of each calendar quarter, starting with the quarter in which sales of the Licensed Products

commence, pay to Rehco all amounts then due pursuant to this Agreement, minus only such amounts expressly permitted to be deducted by this Agreement.

7.g. Spin Master shall, within forty-five days following the end of each calendar quarter, starting with the quarter in which sales of the Licensed Products commence, submit to Rehco a sales history report of the sales of the Licensed Products (itemized by SKU number) during such quarter and the corresponding deductions and calculations of royalties, if any, due to Rehco.

7.h. Spin Master may take deductions for freight allowances, taxes, commissions, bad debts, returns which are accepted and credited by Spin Master, markdown allowances and customary trade discounts in quarters subsequent to the quarters in which the sales of Licensed Products to which those deductions are attributable occurred, provided that:

    7.h.i. deductions attributable to any one quarter shall not, in the aggregate, exceed the limitations contained in this Agreement's definition of "Net Wholesale Selling Price;"

    7.h.ii. Spin Master's quarterly reports to Rehco shall clearly identify all quarters for which such deductions are taken and the aggregate totals of such deductions for each quarter; and

    7.h.iii. in no event shall Rehco ever be required to refund to Spin Master any royalties previously paid.

7.i. All payments shall be made to Rehco in U.S. Dollars, subject to tax withholding requirements under applicable law, if any. Royalties on sales in foreign currencies shall be based on the exchange rate published in "The Wall Street Journal" which is in effect on the last business day of the calendar quarter for which royalty payments and reports are due.

7.j. The obligations and the covenants of the Parties to this Agreement under this Article 7 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

8. **SPIN MASTER'S RECORDS.**

8.a. Spin Master agrees to keep for a minimum of two years, full and accurate books of account, records, data and memoranda respecting the manufacture and sales of the Licensed Products in sufficient detail to enable the payments and deductions hereunder to Rehco to be determined.

8.b. Spin Master gives Rehco the right, at its own expense, to examine and copy said books and records respecting the manufacture and sales of the Licensed Products

on at least ten days' prior written Notice given pursuant to the Notice provisions of this Agreement, provided that:

- 8.b.i. such examination and copying shall not occur more often than once in any calendar year, unless such examination reveals a 5% or more underpayment of any quarterly royalty amount to Rehco;

- 8.b.ii. Rehco's Notice of the exercise of its right to examine and copy said books and records shall include a schedule of the rates to be charged by the auditors selected by Rehco;

- 8.b.iii. such examination and copying shall be conducted by an independent auditor selected by Rehco and approved by Spin Master, which approval shall not be unreasonably withheld, although Spin Master may select one of Arthur Anderson, Deloitte & Touche, Ernst & Young, KPMG or Pricewaterhouse Coopers, or their successors, to conduct the examination and copying, in which case Spin Master shall pay any and all additional expenses attributable to such selection without regard to the results of such examination; and

- 8.b.iv. such examination and copying shall be conducted in such manner as to not unduly interfere with the business of Spin Master;

8.c. In the event that such examination reveals any underpayment of any amounts due to Rehco, Spin Master shall pay all such amounts in full within thirty days of its receipt from Rehco of the results of such examination and copying.

8.d. In the event that such examination and copying reveals a 5% or more underpayment of any quarterly royalty payment to Rehco, Spin Master shall pay all costs of such examination and copying, including the costs and expenses of the person or entity examining or copying said books and records, copying expenses, travel expenses, lodging expenses and attorneys fees. Spin Master shall make such payment within thirty days of its receipt of any invoice for such costs and expenses.

8.e. Except as required by law or an order of a court of competent jurisdiction, neither Rehco nor Rehco's representatives shall disclose to any other person or entity any information or documents acquired as a result of any such examination, except in the course of responding to discovery requests, testifying or introducing evidence in any action instituted in a court of competent jurisdiction to enforce the rights of Rehco under the terms of this Agreement.

8.f. The obligations and the covenants of the Parties to this Agreement under this Article 8 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

## 9. TERMINATION OF LICENSE.

9.a. If the Licensed Products are not offered to the trade at or before the New York Toy Fair in February, 2002, Rehco shall have the right to terminate the License upon sixty days written Notice given pursuant to the Notice provisions of this Agreement.

9.b. If Spin Master or any of its sublicensees, Subsidiaries or Affiliates has not introduced the Licensed Products outside the United States of America within one year following the introduction of the Licensed Products in the United States of America, Rehco may thereafter limit the Licensed Territory to only the United States of America by giving Spin Master Notice pursuant to the Notice provisions of this Agreement. Upon giving such Notice to Spin Master, Rehco would thereafter have the right to license to others the rights to the Item, the Licensed Products, the subject matter of all patents and patent applications filed or to be filed on the Item and the Licensed Products and the Collateral Rights outside of the United States of America.

9.c. If Spin Master ceases the manufacture, promotion and sale of the Licensed Products for a period of three months following their introduction, and Spin Master thereafter fails to resume the manufacture, promotion and sale of the Licensed Products within thirty days after written Notice given pursuant to the Notice provisions of this Agreement to Spin Master, then either Party may terminate the License by giving Notice to the other pursuant to the Notice provisions of this Agreement. Manufacturing, promotion or sale of the Licensed Products by any Subsidiary, Affiliate or sublicensee of the Spin Master shall be deemed for the purposes of this Subparagraph of this Agreement to be the manufacturing, promotion or sale of the Licensed Products by Spin Master.

9.d. Beginning with the First Quarter of Calendar Year 2003, if the number of units of the Licensed Products sold by Spin Master, its Subsidiaries and Affiliates is less than 2,500 for each of two consecutive quarters, Rehco shall have the right to terminate the License upon ten days written Notice given pursuant to the Notice provisions of this Agreement.

9.e. If Spin Master shall make an intentionally false report, then Rehco may, at its option, terminate the License by written Notice given pursuant to the Notice provisions of this Agreement to Spin Master. Such termination shall be effective thirty days after the date of such Notice.

9.f. If Spin Master shall at any time fail to make any payment when required by the terms of this Agreement or shall fail to make any report when required by this Agreement, and Spin Master thereafter fails to make any such payment or report within thirty days after written Notice given pursuant to the Notice provisions of this Agreement to Spin Master, then Rehco may, at its option, immediately terminate the License by written Notice given pursuant to the Notice provisions of this Agreement to Spin Master.




9.g. If the License is terminated under any of the provisions of this Agreement, all rights licensed herein and the rights to any patents and patent applications relating to the Item and the Licensed Products shall revert to Rehco. Such reversion shall include all rights to any improvement, modification, enhancement or derivation of the Item during the term of the License granted by this Agreement, regardless of how or by whom such improvement, modification, enhancement or derivation is made.

9.h. Should Spin Master fail to pay to Rehco any amount due under this Agreement on or before that date such payment is required to be made, Spin Master shall be obligated to pay Rehco interest at an annual rate four percentage points higher than the prime rate of interest charged by the Chase Manhattan Bank in New York on such unpaid amount, calculated from the date such payment is required to be made.

9.i. Any termination of the License pursuant to this Article 9 of this Agreement, including its subparagraphs, shall not relieve Spin Master of any liability for any default.

9.j. Upon termination of the License, Spin Master and its sublicensees shall have the right to dispose of their existing inventory of the Licensed Products, whether completed or in the process of manufacture, and to complete all orders on hand, for a period of six months. Royalty payments shall continue as provided in this Agreement.

9.k. The obligations and the covenants of the Parties to this Agreement under this Article 9 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

10. **PATENTS.**

10.a. Rehco may, at its sole discretion and at its own expense, obtain and maintain patent protection for the Item and the Licensed Products in those countries within the Licensed Territory. Spin Master shall cooperate with and assist Rehco in the preparation and filing of such patent applications, including executing such documents as Rehco may request, to protect the Item and the Licensed Products. Rehco shall reimburse Spin Master for the reasonable costs and attorneys fees associated with the preparation and filing of such patent applications. Spin Master may, at its option, deduct such costs and fees from any royalty payments due to Rehco pursuant to this Agreement.

10.b. If Rehco does not obtain and maintain patent protection for the Item and the Licensed Products pursuant to the preceding Subparagraph of this Agreement within thirty days of Notice given by Spin Master pursuant to the Notice provisions of this Agreement, then, with the consent of Rehco, which consent shall not be unreasonably withheld, Spin Master may, at its sole discretion and at

Page 9 of 9
RADIO-CONTROLLED HELICOPTER AGREEMENT

its own expense, obtain and maintain patent protection for the Item and the Licensed Products in those countries within the Licensed Territory in which Rehco has not already obtained or applied for patent protection. No application for patent protection shall be filed without the prior approval by Rehco of the names of the inventors listed in such application. Spin Master shall, at Rehco's request, provide Rehco with an assignment to Rehco of the patent rights of any person listed as an inventor on any such application. Rehco shall cooperate with and assist Spin Master in the preparation and filing of such patent applications, including executing such documents as Spin Master may request, including but not limited to an assignment of patent rights, to protect the Item and the Licensed Products. Spin Master shall reimburse Rehco for the reasonable costs and attorneys fees associated with the preparation and filing of such patent applications.

10.c. Any and all patent protection obtained for the Item and the Licensed Products shall revert to Rehco upon termination of the License.

10.d. Each Party agrees to keep the other fully advised and informed of the progress of any patent applications, and to provide copies of said applications and office actions and amendments thereto as soon as such are available.

11. **TRADEMARKS AND COPYRIGHTS.**

Spin Master may, in its discretion, apply to the Item and the Licensed Products any trademarks that it selects and appropriate patent notices and/or copyright notices. Spin Master shall own any such trademark or copyright apart from the rights licensed by this Agreement. Spin Master shall also own any such trademark or copyright created, owned or submitted by Rehco for the Item, and the rights to apply such trademark or copyright to the Item and the Licensed Products shall be included in the rights granted by, and the terms of this Agreement relating to, the License, but shall not revert to Rehco upon the termination of the License, if any.

12. **PRODUCT LIABILITY AND INFRINGEMENT DEFENSE.**

12.a. Spin Master agrees to indemnify Rehco against any and all loss and expense, damages, costs and attorneys fees arising out of any claims, demands, actions, suits or prosecutions for injury or property damage based on the use of the Item or the Licensed Products as produced and sold by Spin Master, its Subsidiaries, Affiliates or sublicensees.

12.b. Rehco agrees to indemnify Spin Master against any and all loss and expense, damages, costs and attorneys fees arising out of any claims, demands, actions, suits or prosecutions based on any claim by any other person or entity of either a superior right in and to the Item or the Licensed Products or any feature thereof, a superior right in and to the sale of the Licensed Products or any patent infringement arising out of the distribution and sale of the Item or the Licensed Products, subject to the following limitations and conditions:

12.b.i. Such indemnification shall not exceed 50% of the royalties paid to Rehco pursuant to the terms of this Agreement.

12.b.ii. After notice has been received by Spin Master of such a claim, demand, action, suit or prosecution, Spin Master shall thereafter be entitled to escrow all unpaid royalties accruing pursuant to this Agreement until a total of 50% of the royalties paid and accrued to date under this Agreement have been escrowed. Thereafter, only 50% of all future royalties earned shall be escrowed. Such escrowed funds shall only be used to defray costs incurred and damages assessed until such time that such claim, demand, action, suit or prosecution is settled or otherwise disposed of. Within thirty days after the settlement or disposition of such claim, demand, action, suit or prosecution, any and all excess funds in such escrow account shall be paid to Rehco.

12.c. The obligations and the covenants of the Parties to this Agreement under this Article 12 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

13. **INFRINGEMENT PROSECUTION.**

13.a. Rehco will have the right, at its sole discretion, to institute, prosecute and resolve any claim, action or proceeding against third parties for or by reason of any actual or threatened infringement of the rights licensed herein (an "Infringement Claim"). If Rehco elects to prosecute an Infringement Claim:

13.a.i. Such Infringement Claim will be instituted, maintained and prosecuted solely at the cost and expense of Rehco, and any and all sums collected or recovered in any such claim, action or proceeding, whether by decree, judgment, settlement or otherwise, shall belong exclusively to Rehco without regard to the provisions of this Agreement with respect to royalty payments; and

13.a.ii. Upon request of Rehco, Spin Master will execute all papers, testify in all matters and otherwise cooperate in any and every way necessary and desirable for the prosecution of any such Infringement Claim, including appearing as a party plaintiff if requested by Rehco. Rehco will reimburse Spin Master for the reasonable out-of-pocket expenses incurred as a result of such cooperation. Rehco will promptly notify Spin Master of the institution of any claim, action or proceeding against third parties for or by reason of any such unlawful infringements.

13.b. Rehco will also have the right, at its sole discretion, to request Spin Master to pay a portion of the costs and expenses of Rehco's prosecution of an Infringement Claim. Spin Master will have the right, at its sole discretion, to refuse such a

request. If Spin Master agrees to pay a portion of the costs and expenses of Rehco's prosecution of an Infringement Claim:

13.b.i. The Parties will share the costs and expenses of such Infringement Claim, as well as any and all sums collected or recovered in any such Infringement Claim, whether by decree, judgment, settlement or otherwise, equally or in some other proportion to which both Parties agree, without regard to the provisions of this Agreement with respect to royalty payments; and

13.b.ii. Upon request of Rehco, Spin Master will execute all papers, testify in all matters and otherwise cooperate in any and every way necessary and desirable for Rehco's prosecution of any such claim, action or proceeding, including appearing as a party plaintiff if requested by Rehco.

13.c. If Rehco elects to not institute, prosecute or resolve any Infringement Claim within thirty days of Notice given by Spin Master pursuant to the Notice provisions of this Agreement, Spin Master will have the right, at its sole discretion, to seek the consent of Rehco, which consent shall not be unreasonably withheld, to institute, prosecute or resolve such Infringement Claim. If Rehco consents to Spin Master's prosecution of such Infringement Claim:

13.c.i. Such Infringement Claim will be instituted, maintained and prosecuted solely at the cost and expense of Spin Master, and any and all sums collected or recovered in any such claim, action or proceeding, whether by decree, judgment, settlement or otherwise, shall belong exclusively to Spin Master without regard to the provisions of this Agreement with respect to royalty payments; and

13.c.ii. Upon request of Spin Master, Rehco will execute all papers, testify in all matters and otherwise cooperate in any and every way necessary and desirable for the prosecution of any such Infringement Claim, including appearing as a party plaintiff if requested by Spin Master. Spin Master will reimburse Rehco for the reasonable out-of-pocket expenses incurred as a result of such cooperation. Spin Master will promptly notify Rehco of the institution of any claim, action or proceeding against third parties for or by reason of any such unlawful infringements.

13.d. The obligations and the covenants of the Parties to this Agreement under this Article 13 of this Agreement, and each of its subparagraphs, are independent of all other obligations and covenants of this Agreement, and shall survive the termination of the License and the Agreement, if any.

14. CONFIDENTIALITY.

14.a. Except as required by law or an order of a court of competent jurisdiction, neither Party or their representatives shall disclose to any other person or entity the

financial terms of this Agreement, except in the course of an action instituted in a court of competent jurisdiction to enforce the rights of a Party under the terms of this Agreement.

14.b. Except to the extent reasonably necessary to perform the obligations and obey the proscriptions of this Agreement, Rehco shall not disclose any information relating to the Item, the Licensed Products or the existence of this Agreement to any other person or entity, unless the information is first made public by Spin Master or until the Licensed Products are first marketed, whichever occurs first.

## 15. SPIN MASTER'S BANKRUPTCY.

In the event that a voluntary petition of bankruptcy is filed by Spin Master, or an involuntary petition of bankruptcy is filed against Spin Master and is not dismissed within sixty days thereafter, or if Spin Master is adjudged insolvent, or if an assignment of Spin Master's property is made for the benefit of creditors or in the event of any other circumstances which prevents effective performance by Spin Master under this Agreement, then the License shall terminate in a manner consistent with all applicable bankruptcy laws, rules and regulations.

## 16. DELEGATION OF REHCO'S OBLIGATIONS.

Rehco may, at its sole discretion, delegate or assign some or all of its obligations under this Agreement to others, including its own Subsidiaries and/or Affiliates, as well as their respective officers, directors, agents and employees.

## 17. LIMITATION ON REHCO'S WAIVERS.

Rehco shall not by act, delay, omission or otherwise be deemed to have waived any of its rights or remedies hereunder, or any provision hereof, unless such waiver is in writing signed by Rehco and Notice of such waiver is given pursuant to the Notice provisions of this Agreement. Any such waiver shall be effective only to the extent specifically set forth therein. A waiver by a Rehco of any right or remedy under this Agreement on any one or more occasions shall not be construed as a bar to or waiver of any such right or remedy which Rehco would otherwise have had on any future occasion.

## 18. PRODUCT LIABILITY INSURANCE.

18.a. Spin Master shall, throughout the remaining term of this Agreement obtain and maintain, at its own expense, standard product liability insurance coverage, naming Rehco as an additional named insured.

18.b. Such policy shall provide protection against any and all claims, demands and causes of action arising out of any defects or failure to perform, alleged or otherwise, of the Item or the Licensed Products.

19. **ENTIRE AGREEMENT.**

   19.a. This Agreement sets forth the entire agreement and understanding of the Parties hereto and supersedes and merges any prior purchase orders, agreements, arrangements and understandings related to the subject matter herein.

   19.b. There have been no representations or statements, oral or written, upon which any Party hereto has relied, except those expressly set forth in this Agreement.

   19.c. The Parties contemplate that additional potentially marketable products may be added to the scope of the rights and obligations of this Agreement. Such products shall be added to the scope of this Agreement and added to the definition of the "Item" herein only through the execution of an acknowledgment by both Parties that expressly refers to this Agreement.

   19.d. This Agreement may not be changed orally. To be effective, any modification or amendment of this Agreement must be made in writing, be executed by the Parties to this Agreement and specifically refer to this Agreement.

   19.e. The Parties hereto agree to execute, acknowledge and deliver all such further instruments, and to do all such other acts, as may be necessary or appropriate in order to carry out the intent and purpose of this Agreement.

   19.f. All pronouns in this Agreement, whether in masculine, feminine or neuter form, shall be deemed to refer to the object of such pronoun whether same is masculine, feminine or neuter in gender, as the context may suggest or require.

   19.g. All terms used in this Agreement, whether or not defined in this Agreement, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such term is singular or plural in nature, as the context may suggest or require.

   19.h. The titles and captions of this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

20. **NO JOINT VENTURE.**

Nothing in this Agreement shall be construed to place the Parties in the relationship of partners or joint venturers, and neither Party shall have the power to obligate or bind the other in any manner, except as provided in this Agreement.

21. **SEVERABILITY.**

Invalidity, illegality or unenforceability of any part of this Agreement shall not affect the validity, legality or enforceability of the balance thereof. If a term, provision, covenant or condition of this Agreement shall be deemed invalid due to its scope or breadth, such

term, provision, covenant or condition of this Agreement shall be deemed valid to the extent of the scope or breadth permitted by law.

## 22. ILLINOIS LAW AND FORUM.

This Agreement and the Parties' performance hereunder shall be construed according to, and governed by, the laws of the State of Illinois. The Parties to this Agreement agree that any litigation between them relating to or arising out of this Agreement shall only be filed in a state or federal court of competent jurisdiction located in Chicago, Illinois. Should such litigation be filed in a court not located in Chicago, Illinois, the Parties hereto consent and agree to its transfer to or dismissal and refiling in a state or federal court of competent jurisdiction located in Chicago, Illinois.

## 23. ASSIGNMENT OF AGREEMENT.

The Parties to this Agreement may assign this Agreement to their own Subsidiary or Affiliate if such assignee agrees to be bound by the provisions of this Agreement. If a Party to this Agreement is involved in a merger, consolidation or the transfer of substantially all of its assets or business, such Party shall have the right to assign this Agreement. No assignment pursuant to this Article shall create any additional advance or guaranteed royalty. Each Party to this Agreement agrees to execute all documents reasonably required to give effect to the foregoing assignments if requested by the other. No assignment of this Agreement shall be effective until Notice of such assignment is given pursuant to the Notice provisions of this Agreement.

## 24. NOTICES ONLY IN WRITING.

24.a. All Notices required to be given by this Agreement shall be in writing and sent by certified mail or overnight delivery by a national overnight delivery service to the persons designated below and shall be deemed given when sent or mailed. No Notice given only by facsimile transmission, e-mail or other means of electronic communication shall be effective.

24.b. Notices, communications, reports and payments required to be given or made to Rehco by this Agreement shall be addressed as follows unless otherwise designated by Rehco:

Rehco, L.L.C.
1300 West Washington Boulevard
Chicago, Illinois 60607
Attention: Steven Rehkemper

24.c. Notices, communications, reports and payments required to be given or made to Spin Master by this Agreement shall be addressed as follows unless otherwise designated by Spin Master:

Spin Master Toys
450 Front Street West
Toronto, Ontario M5V 1B6 Canada
Attention: Ronnen Harary

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

REHCO, L.L.C.

By: _____
Steven Rehkemper
Member

SPIN MASTER TOYS

By: _____
Ronnen Harary
C.E.O.

Page 16 of 16
RADIO-CONTROLLED HELICOPTER AGREEMENT