IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **REHCO, LLC,**  Plaintiff,  v.  **SPIN MASTER, LTD.,**  Defendant. | Case No. 13 C 2245  Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

This breach of contract and patent infringement action arises out of a failed business agreement between Plaintiff Rehco, LLC ("Rehco") and Defendant Spin Master, Ltd. ("Spin Master") concerning the development and licensing of certain technology for radio-controlled airborne toys. Spin Master has moved to dismiss Count IV of Rehco's Second Amended Complaint [ECF No. 40] and to strike Rehco's infringement contentions for failure to comply with the Local Patent Rules [ECF No. 44]. Rehco opposes both Motions and, in addition, has moved to strike an exhibit that it contends Spin Master annexed improperly to its brief in support of its Motion to Dismiss [ECF No. 56]. For the reasons stated herein, Spin Master's Motion to Dismiss is granted, Spin Master's Motion to Strike is granted in part and denied in part, and Rehco's Motion to Strike is granted.

## I. BACKGROUND

Rehco is a company that invents and develops products for the toy industry. Spin Master is the third largest toy company in North America and has offices located throughout the world.

In December 2000, Rehco and Spin Master entered into a contract whereby Rehco agreed to develop technology for a new type of radio-controlled toy airplane (the "Airplane") in exchange for a royalty on all of Spin Master's future sales of the Airplane. (*See,* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Ex. A (the "Airplane Agreement"), ECF No. 40-1). The Airplane Agreement provided that Spin Master could, at its sole discretion and expense, obtain patent protection for the Airplane. (*Id.* ¶ 3). Any patents obtained would be Spin Master's property and Spin Master would have the right to institute, prosecute, or resolve any action based upon the infringement of those patents. (*Id.* ¶¶ 3, 9). The parties stipulated that "[d]uring and after" the Airplane Agreement, Rehco would assist in any efforts Spin Master took to secure, maintain, or defend its patent rights in the Airplane. (*Id.* ¶ 8).

The Airplane Agreement also assigned Spin Master "the sole and exclusive right within the entire world to manufacture, to have manufactured for it, to use, to sell, to distribute and to have distributed for it and to in any other manner exploit the [Airplane] and the subject matter of all patents and patent

applications filed or to be filed on the [Airplane]." (*Id.* ¶ 17 (the "Assignment Clause")). In the event that Spin Master defaulted on its contractual obligations, however, all rights granted by the Assignment Clause would revert back to Rehco. (*Id.* ¶ 18 (the "Reversion Clause")).

Ultimately, Spin Master applied for and received patent protection for the Airplane under U.S. Patent No. 6,612,893 (the "'893 Patent"). In a separate document filed with the United States Patent and Trademark Office, Rehco's inventors assigned Spin Master all rights to the '893 Patent. (Def.'s Mem., Ex. B, ECF No. 40-2).

On March 26, 2013, Rehco filed this action, alleging that Spin Master breached the Airplane Agreement by failing to pay the agreed-upon royalties on sales of the Airplane and, as a result of its breach, had been infringing on the '893 Patent. Rehco also seeks damages related to a separate agreement for the development of a radio-controlled toy helicopter. (*See,* Second Am. Compl., Ex. 1, ECF No. 37-1 (the "Helicopter Agreement")).

## II. ANALYSIS

### A. Rehco's Motion to Strike

Before turning to the merits of Spin Master's Motion to Dismiss, the Court first addresses Rehco's Motion to Strike. As an attachment to its Reply papers in support of its Motion to Dismiss, Spin Master submitted a Rehco internal document that outlines

potential claims and litigation strategies related to its development agreements with Spin Master. (*See,* ECF No. 53-1 ("Exhibit A")). Rehco contends that Spin Master should be disallowed from using the document because it was produced inadvertently and is protected by the work product rule. Spin Master disagrees and argues that Rehco waived any applicable privilege by failing to object initially to its use of the document.

The work product doctrine excludes from discovery any documents or materials that contain the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). This protection is designed to "establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006). The work product rule is not absolute, however, and the protection may be waived by disclosures to adversaries or to third parties "in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Vardon Golf Co. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D. Ill. 2003).

The document that Spin Master seeks to use in connection with its Motion to Dismiss is plainly Rehco's work product. It was prepared by Rehco's in-house counsel in anticipation of litigation

against Spin Master and it contains a summary evaluation of the strengths and weaknesses of Rehco's potential causes of action and legal strategies. (*See,* Decl. of Scott Lloyd, Esq., dated Oct. 14, 2013 (the "Lloyd Decl."), ¶¶ 4-5, ECF No. 60-1). Indeed, the document essentially provides a blueprint to Rehco's case and, thus, falls squarely within the "zone of privacy" that the work product rule is intended to protect. *See, Hobley,* 433 F.3d at 949. The only issue is whether Rehco's disclosure of the document waived its ability to assert work product protection over it.

In a Stipulated Protective Order entered on June 26, 2013, Rehco and Spin Master agreed that the inadvertent disclosure of work product material would be "handled in accordance with Federal Rule of Evidence 502 and Federal Rule[] of Civil Procedure 26(b)(5)(B)." ECF No. 33 ¶ 6. Rules 502 and 26(b)(5)(B) serve different but related purposes. Rule 26(b)(5)(B) "is essentially a 'clawback' provision . . . [that] permits parties to flag documents inadvertently produced during discovery that they believe are subject to privilege, and prohibits receiving parties from using them until the privilege claim is resolved." *Woodward v. Victory Records, Inc.,* No. 11 CV 7594, 2013 WL 4501455, at *2 (N.D. Ill. Aug. 22, 2013). Rule 502, on the other hand, sets forth a framework for determining whether a party's disclosure of privileged materials results in a waiver of the privilege.

Under Rule 502(b), a party's disclosure of work product to an adversary does not constitute a waiver of any applicable protection if (1) the disclosure is inadvertent, (2) the party took reasonable steps to prevent disclosure, and (3) the party took reasonable steps to rectify the error. FED. R. EVID. 502(b). Rehco asserts that the document was disclosed accidentally following a miscommunication between counsel and an outside vendor that was responsible for imaging and compiling documents for production. (*See,* Undated Decl. of Aaron W. Purser, Esq. (the "Purser Decl.") ¶ 9, ECF No. 56-1). Spin Master does not dispute whether Rehco's production of the document was unintentional or even whether it took reasonable steps to prevent the disclosure. Rather, it contends that Rehco's failure to object promptly to its use of the document is evidence that Rehco did not take reasonable steps to rectify the disclosure. Specifically, Spin Master takes issue with the fact that Rehco did not voice an objection to the use of the document until approximately one week after Spin Master served notice of and presented a motion seeking leave to file its reply papers and the document as an exhibit under seal. (*See,* ECF No. 50).

Rehco does not deny that it failed to object to Spin Master's Motion, but instead explains that the motion was filed and noticed for presentment during a time when Rehco's lead counsel, Timothy Gochocinski, was on vacation. (Undated Decl. of Timothy

Gochocinski, Esq. (the "Gochocinski Decl."), ¶¶ 4-5, ECF No. 56-2). Mr. Gochocinski's colleague, Aaron Purser, attended the hearing in Mr. Gochocinski's place but, at the time, did not recognize that the document that Spin Master was seeking to file under seal was an inadvertently-produced internal document reflecting Rehco's litigation strategy. (Purser Decl. ¶ 8). After returning from vacation, Mr. Gochocinski reviewed the filings that had occurred in his absence and realized that the document was work product and had been produced by mistake. (Gochocinski Decl. ¶ 6). Mr. Gochocinski immediately informed Spin Master's counsel that the document had been produced inadvertently and requested that the document be returned in accordance with the parties' stipulated protective order. (*Id.* ¶ 7). Mr. Gochocinski also took steps to ascertain the cause of the disclosure. (*Id.* ¶ 8). Despite Mr. Gochocinski's repeated requests, however, Spin Master refused to return the document. (*Id.* ¶¶ 10-11).

The foregoing demonstrates clearly that Rehco took reasonable steps to remedy its mistaken disclosure. Upon learning that the document had been produced inadvertently, Rehco's counsel investigated the reason for the disclosure and promptly brought the issue to Spin Master's attention. Any delay that may have been caused by Rehco's initial failure to object to Spin Master's use of the document was inconsequential and resulted in no prejudice. In these circumstances, the Court finds that Rehco acted diligently to

remedy its inadvertent disclosure and, therefore, did not waive work product protection over the document. Accordingly, Rehco's Motion to Strike is granted.

### B. Spin Master's Motion to Dismiss

Count IV of Rehco's Second Amended Complaint alleges direct and indirect infringement of the '893 Patent. Spin Master seeks to dismiss Count IV on grounds that Rehco neither owns nor possesses substantial rights in the '893 Patent and therefore lacks standing to sue for infringement.

The existence of standing is a threshold jurisdictional requirement in every federal action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In ruling on a motion to dismiss for lack of standing, the Court may look beyond the pleadings and consider all competent evidence, including any external facts that may call a party's standing into question. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009). Because standing is an indispensable part of a plaintiff's case and more than a mere pleading requirement, a plaintiff bears the burden of proof in establishing standing "with the manner and degree of evidence required at [any] successive stages of the litigation." *Hay v. Ind. State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002).

In patent infringement actions, standing derives from the Patent Act, which "require[s] that a suit for infringement of

patent rights ordinarily be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. Rpost, Inc.,* 473 F.3d 1187, 1189 (Fed. Cir. 2007). Subsequent licensees also may have standing to sue, but only if they hold "all substantial rights" under the patent. *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 976 (Fed. Cir. 2005). There are some exceptions to this rule, *see, Propat,* 473 F.3d at 1193, but none apply in this case.

Rehco contends that ownership or at least substantial rights in the '893 Patent reverted back to it pursuant to the Airplane Agreement's Reversion Clause, which was triggered after Spin Master defaulted on its contractual obligations. The argument is somewhat puzzling, however, since a reversion typically implies "the returning of property to a former owner," *see,* Miriam-Webster Online Dictionary, http://www. miriam-webster. com/ dictionary/ reversion (last accessed March 12, 2014), and Rehco never owned the '893 Patent. Indeed, as the Airplane Agreement made clear, the power to obtain and hold patent rights in the Airplane belonged to Spin Master alone. (Airplane Agreement ¶ 3).

In any event, assuming Spin Master did breach the Airplane Agreement, only the rights set forth in the Assignment Clause would have transferred back to Rehco. Such rights included "the sole and exclusive right . . . [to] exploit the [Airplane] and the subject matter of all patents and patent applications . . . on the [Airplane]," (Airplane Agreement ¶ 17), but not the patent rights

themselves, which had been granted to Spin Master under a separate provision of the Airplane Agreement and, therefore, were not subject to the Reversion Clause.

Nor did the Reversion Clause transfer to Rehco "all substantial rights" in the '893 Patent. In determining whether an agreement transfers all substantial rights to a patent, the most important consideration is the nature and scope of the transferee's right to sue for infringement. *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). If the transferee has no right to sue accused infringers, there is a strong presumption that all substantial rights were not transferred. *Id.* The Airplane Agreement conferred upon Spin Master the sole right to institute, prosecute, and resolve any action for infringement. (Airplane Agreement ¶ 9). Under Federal Circuit precedent, Spin Master's authority in that regard – which was not limited by any reversion to Rehco – is "thoroughly inconsistent" with the notion that there was an assignment of all substantial rights in this case. *Alfred E. Mann Found.*, 604 F.3d at 1361-62.

The Court also finds it significant that Rehco had no obligation under the Airplane Agreement to maintain the '893 Patent in any way, nor any right to veto Spin Master's litigation or licensing decisions. *See, New Medium Technologies LLC v. Barco N.V.*, 644 F.Supp.2d 1049, 1051-53 (N.D. Ill. 2007) (discussing

factors courts consider when determining whether an agreement transfers "all substantial rights" to a patent). Moreover, at the time Spin Master obtained patent protection for the Airplane, Rehco's inventors assigned to Spin Master any interest that they may have held in the '893 Patent. Since that assignment contained no mechanism for the reversion of any patent rights to Rehco, it is difficult to see how Rehco could later have obtained all substantial rights to the patent.

For these reasons, the Court finds that Rehco lacks standing to pursue its claim for infringement of the '893 Patent. Spin Master's Motion to Dismiss Count IV is granted.

### C. Spin Master's Motion to Strike

Spin Master also has moved to strike Rehco's Initial Infringement Contentions for failure to comply with Local Patent Rule 2.2. Specifically, Spin Master complains that Rehco has failed to (1) demonstrate on an element-by-element basis how the accused products infringe Rehco's patents, (2) identify the function or structure for the means-plus-function claims, and (3) provide adequate detail regarding its claims for indirect and willful infringement and for infringement under the doctrine of equivalents.

Spin Master's first two objections plainly lack merit. Rehco's Amended Initial Infringement Contentions contain detailed charts that both identify the specific elements for each of its

claims and locate where those elements can be found within each of the accused Spin Master products. Rehco's contentions also provide sufficient detail concerning the function and structure of each means-plus-function element asserted in its claims. That is all that is necessary under the local rules and the Court declines to require anything further of Rehco at this point.

With respect to Spin Master's remaining objection, Rehco has identified a sufficient basis for its indirect and willful infringement claims. Rehco's claim under the doctrine of equivalents, however, falls short of compliance with the local rules. Local Patent Rule 2.2(d) requires that "[f]or any claim under the doctrine of equivalents, the Initial Infringement Contentions must include an explanation of each function, way, and result that is equivalent and why any differences are not substantial." Rehco's Amended Initial Infringement Contentions state that the accused Spin Master products "perform substantially the same function, in substantially the same way, to achieve substantially the same result," but provide no explanation as to why this is the case or why any differences in the accused products are not substantial. Rehco's claim therefore is insufficient in its current form. Rehco shall have twenty-one (21) days from the date of this order to amend its infringement contentions to include additional information consistent with that which is required under Local Patent Rule 2.2(d).

Spin Master's Motion to Strike thus is granted in part and denied in part.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Spin Master's Motion to Dismiss Count IV of Rehco's Second Amended Complaint [ECF No. 40] is granted;

2. Rehco's Motion to Strike [ECF No. 56] is granted; and

3. Spin Master's Motion to Strike [ECF No. 44] is granted in part and denied in part. Rehco shall have twenty-one (21) days from the date of this order to amend its infringement contentions to include additional information consistent with that which is required under Local Patent Rule 2.2(d).

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Date: 3/17/2014