## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| REHCO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 13-CV-02245 |
| | ) | |
| SPIN MASTER, LTD., | ) | |
| | ) | |
| Defendant. | ) | PATENT CASE |

---

## DEFENDANT SPIN MASTER, LTD.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MEMORANDUM IN SUPPORT

---

**Table of Contents**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................... 3

III. ARGUMENT ..................................................................................................... 4

   A.   Spin Master is Entitled to Judgment as a Matter of Law As Rehco Failed to Present Legally Sufficient Evidence of Infringement. ......................................................... 4

   B.   The Damages Verdict Was Not Supported by Legally Sufficient Evidence. ..................... 9

      1.   The Royalty Base Was Not Apportioned. ...................................................... 9

      2.   The Royalty Rate Was Not Apportioned and Licenses Were Introduced Without Demonstrating Comparability. ........................................................................ 12

         i.   Rehco's failure to establish comparability with the Item Licenses renders its royalty rate arbitrary ............................................................................................ 14

   C.   Spin Master is Entitled to Judgment as a Matter of Law on Willfulness. ........................ 17

   D.   Spin Master is Entitled to Judgment as a Matter of Law on Rehco's Breach Claim. ........ 19

      1.   No Substantial Evidence that the Havoc is a Modification of the Item. ...................... 20

      2.   No Substantial Evidence that the Havoc is an Improvement of the Item. .................... 23

**Table of Authorities**

## Cases

*Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 463, 706 N.E.2d 882, 884 (Ill. 1999). 20

*Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1222 (Fed. Cir. 1996) ............................ 5

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1366 (Fed. Cir. 2001) ............. 18

*Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP (E.D. Tex. May 25, 2017)......... 14

*Campbell v. Peters,* 256 F.3d 695, 699 (7th Cir. 2001) ................................................................. 3

*CSX Transp., Inc. v. Five Star Enter. of Ill., Inc.,* No. 16 C 9833, 2018 WL 6735705 (N.D. Ill. Dec. 24, 2018)................................................................................................................................ 21

*Dispatch Automation, Inc. v. Richards,* 280 F.3d 1116, 1119 (7th Cir. 2002)............................. 22

*Dominion Energy, Inc. v. Alstom Grid LLC,* 725 Fed. Appx. 980, 986 (Fed. Cir. 2018).............. 4

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,* 2017 WL 2190055 (E.D. Tex. May 18, 2017) ............................................................................................................................................ 19

*Evonik Degussa GmbH v. Materia, Inc.*, 305 F.Supp.3d 563, 577 (D. Del. 2018) ...................... 17

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) .................................................................................................................................... 9

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) ................................. 9

*Fontana v. TLD Builders, Inc.* 362 Ill.App.3d 491, 510-11, 840 N.E.2d 767 (2005) ................. 22

*Gordon v. Tiger Illinois,* 2011 WL 10483249 (Ill. App. 2011) .................................................... 23

*Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625 (D. Del. 2016) .............................................. 18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016)....................................... 2, 17

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983).................... 14

*Lane v. Le Brocq*, No. 15 C 6177, 2016 WL 5955536 (N.D. Ill. Oct. 12, 2016) ........................ 19

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) .......... 2, 10, 14

*Local 75, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Schreiber Foods, Inc.*, 213 F.3d 376, 380 (7th Cir. 2000) ...................................................................... 21

*Loggerhead Tools, LLC v. Sears Holding Corp.*, 2016 WL 6778881 (N.D. Ill. Nov. 15, 2016). 18

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ............................... 9

*Mathur v. Bd. of Trustees of S. Illinois Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) ....................... 3

*Mercexchange, L.L.C. v. eBay, Inc.*, 275 F.Supp.2d 695, 720 (E.D. Va. 2003).......................... 17

*Mondis Tech. Ltd., v. LG Electronics, Inc. et al.*, No. 2:15-CV-4431-SRC at 30 (D. N.J. Sep. 24, 2019) ............................................................................................................................................ 13

*Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77 (Fed. Cir. 1999) ........................ 15

*Pandya v. Edward Hosp.*, 1 Fed.Appx. 543, 545 (7th Cir. 2001).................................................. 3

*Paradox Sec. Systems, Ltd. v. ADT Sec. Services, Inc.*, 2010 WL 2925404 (Fed. Cir. 2010)........ 9

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007).............. 7

*Power Integrations, Inc. v. Fairchild Semiconductor Internat'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) ......................................................................................................................... 9, 10, 11

*Princeton Digital Image Corp. v. Ubisoft Entm't,* No. 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017)............................................................................................................... 23

*Promega Corp. v. Life Tech. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017)...................................... 9

*Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) ........................ 4, 8

*TecSec, Inc. v. Adobe, Inc.*, No. 1:10-cv-115, 2019 WL 1233882 (E.D. Va. Mar. 14, 2019) ...... 19

*United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). .................................... 19

*Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) .................................. 9, 10

*VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F.Supp.2d 1072, 1074 (N.D. Cal. Oct. 24, 2007) ................................................................................................................................... 17

*Wachta v. First Federal Sav. & Loan, Ass'n.,* 103 Ill.App.3d 174, 181, 430 N.E.2d 708, 714 (Ill. App. Ct. 1981).............................................................................................................................. 22

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) ........................................................................................................................................... 16

*Yoon Ja Kim v. ConAgra Foods, Inc.,* 465 F.3d 1312, 1320 (Fed. Cir. 2006) ............................. 5

**Rules**

Fed. R. Civ. P. 50(a) ..................................................................................................................... 7

# I.     INTRODUCTION

The jury found in favor of Rehco on its breach of contract and patent infringement claims and awarded it approximately $9.4 million in damages.  Dkt. 284. To secure that verdict, Rehco presented theories that fostered jury confusion, and which were rife with expert *ipse dixit* and an absence of any real evidence. And Rehco led the jury to reach a conclusion contradicted by the undisputed facts and this Court's claim construction.  That finding is not supported by substantial evidence and judgment as a matter of law should be granted.

Regarding the '866 patent, Rehco's case lacks any substantial evidence to support the jury's verdict, and  Spin Master moves for renewed judgment as a matter of law on: (1) infringement; (2) damages; and (3) willfulness.  First, this Court's claim construction required that Rehco demonstrate that the circuit boards in the Vectron Wave, Flutterbye Fairy, and Atmosphere products were programmed in advance of vehicle operation with a first and second speed, and Rehco's expert agreed he needed to look at source code to know how something is programmed. But Dr. Spenko admitted he rendered his opinion of infringement without looking at the source code. Rehco attempted to substitute the testimony of T.W. Wong instead of evidence of programming, but Mr. Wong did not look at the source code for the accused products, and his testimony is not evidence of how those products are programmed. And with respect to the Vectron Wave, Dr. Spenko agreed that product went through a start-up process ***after*** operation of the vehicle, during which it performed the calculations its programming later relied on to set a "Fly Up" and "Go Down" speed. The jury's verdict is not supported by substantial evidence and judgment of non-infringement is warranted.

Regarding damages, evidence was admitted at trial, over Spin Master's objections and directly contrary to Federal Circuit authority, of Spin Master's unapportioned revenues and of

license agreements without any demonstration of apportionment or comparability. And Rehco invited the jury to do exactly what the Federal Circuit warned against—consider Spin Master's revenues and apportion damages itself. The prejudicial error to Spin Master was apparent in Rehco's closing argument, where counsel told the jury "we're asking for five percent", "they keep 95 percent", "that's not greedy". Trial Tr. 988:10-13. This is precisely why the Federal Circuit requires apportionment of the revenues *before* that figure goes to the jury—because any ask by the plaintiff for a smaller percentage, by comparison, appears reasonable. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Rehco also introduced unapportioned license agreements, which were not comparable, further skewing the jury's award. And Rehco failed to apportion the value of Spin Master's separately patented, innovative toy designs from the incremental value of its claimed control system.

Finally, Rehco came forward with no evidence of willfulness outside of Spin Master's knowledge of the patent, and certainly had no evidence of wanton behavior akin to the "actions of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016). There is no evidence in the record to support the jury's finding of willfulness, and that finding should be reversed as a matter of law.

Regarding its breach of contract claim, Rehco's evidence was insufficient to support the verdict the Havoc helicopter was a modification of an Item described in the Helicopter Agreement. Instead of providing any evidence regarding how an Item was modified under the terms of the contract[1], Rehco utilized comparisons with other helicopters and patents, which are outside the

---

[1] It is still not clear which Item description Rehco contends the Havoc is a modification of. In closing argument, Rehco pointed to the RC Mini Item description, but in response to Spin Master's motion for judgment as a matter of law, Rehco pointed to the Radio Controlled Helicopter Item description. This simply further demonstrates that Rehco has not met its burden to show the Havoc is a modification or improvement *of the Item*, where it is not even clear which Item description applies.

plain language of the Item descriptions and are irrelevant. Moreover, the only evidence Rehco offered about the Item descriptions was that the Havoc uses a stacked rotor of a different size. Rehco went on to explain another helicopter falling under a completely different agreement also has a stacked rotor. In other words, the parties agreed a stacked rotor was not enough for that product to fall under the Helicopter Agreement's modification clause. Rehco also tried to offer evidence of a pivot connection in the helicopter, but that is not in the Item descriptions. In fact, Rehco only connected the "pivot point" to an unrelated helicopter patent, which is not a claim at issue. In short, Rehco only offered evidence that the Havoc was a different toy helicopter, developed after the parties entered the Helicopter Agreement. Based on the plain language of the agreement and as a matter of law, judgment is warranted on Rehco's breach claim.

## II.   LEGAL STANDARD

A court should render judgment as a matter of law when "a party has been fully heard on an issue" and there is no "legally sufficient evidentiary basis" for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a). The standard for granting judgment as a matter of law "mirrors the standard for granting summary judgment." *Pandya v. Edward Hosp.*, 1 Fed.Appx. 543, 545 (7th Cir. 2001) (internal quotations omitted). Thus, the Court examines the record in its entirety and views the evidence in the light most favorable to the nonmoving party. *Id*. After doing so, the Court determines "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support [a] verdict." *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (quotations omitted). Judgment as a matter of law is proper "if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001).

### III.  ARGUMENT

**A.      Spin Master is Entitled to Judgment as a Matter of Law As Rehco Failed to Present Legally Sufficient Evidence of Infringement.**

Claim 1 of the '866 patent requires "a first speed being predefined as a speed that causes the vehicle to gain altitude and the second speed being predefined as a speed that causes the vehicle to lose altitude." Ex. 19, at claim 1[2]. This Court expressly construed these limitations to require the first and second speeds be ***programmed*** on circuit board 136 in advance of operation of the vehicle. Dkt. 256 at 10.  At trial, Rehco's technical expert, Dr. Spenko, testified that he would need to see how the circuit board on the Vectron Wave, Flutterbye Fairy, and Atmosphere were programmed with source code to determine infringement. Trial Tr. at 241:2-9. Dr. Spenko also plainly admitted that he rendered his opinion regarding infringement for the Vectron Wave, Flutterbye Fairy, and Atmosphere without looking at Spin Master's source code. Trial Tr. at 215:3-12. Instead, he relied on user manuals, toy play, and a high level planning document (a flow chart) and then provided conclusory and unsupported opinions, leaving the jury with no evidentiary basis at all from which it could determine how the circuit boards for the Vectron Wave, Flutterbye Fairy, and Atmosphere were programmed. *Dominion Energy, Inc. v. Alstom Grid LLC*, 725 Fed. Appx. 980, 986 (Fed. Cir. 2018) (reversing denial of JMOL of noninfringement where infringement was based on a conclusory and unsupported expert opinion).

Where an expert does not provide substantial evidence to support a jury verdict of infringement and offers nothing more than his general opinion the accused product infringes the asserted patent, judgment as a matter of law of non-infringement is proper. *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). Here, Dr. Spenko's opinion was entirely conclusory. Dr. Spenko rendered his opinion without reviewing the source code, something he

---

[2] All Exhibits cited are to exhibits admitted at trial.

admitted you needed to do to determine the circuit board programming. Trial Tr. at 241:2-9. Dr. Spenko provided zero evidence of how the circuit boards on the accused products were programmed, but instead, merely said "it was programmed" a certain way without explaining how he made that determination. As the Federal Circuit noted before, an expert "saying that something is so does not make it true, especially where there is not record to support." *Dominion Energy*, 725 Fed. Appx. at 986. Instead, Dr. Spenko merely testified that he looked at the code and it "confirmed" his opinions, but he never explained how it confirmed his opinions. Trial Tr. 148:12-14; 155:4-7; 170:5-7; 172:16-25; 184:25-185:17. And, in fact, Dr. Spenko admitted there are many parts of the code he did not understand. *Id.*, at 211:1-20; 241:10-17.

First, for the Vectron Wave, Dr. Spenko never provided any testimony regarding how the source code operated, though Spin Master produced code for the Vectron Wave Battle[3]. Trial Tr. 250:11-24. Instead, he merely concluded the Vectron Wave product worked in a certain manner because of testimony of Mr. Wong, a Spin Master employee who did not read the code and cannot read code, regarding a high level flow chart creating for planning purposes. *Id.*, at 237:22-238:25. In other words, Dr. Spenko offered conclusory testimony without any examination of the source code or other tests of the actual accused products to determine speeds. *Yoon Ja Kim v. ConAgra Foods, Inc.,* 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of non-infringement where conclusory expert testimony was the basis for infringement). Thus, any theory of infringement, both direct and under the doctrine of equivalents, fails because Dr. Spenko's conclusory opinions lack any factual basis. *Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1222 (Fed. Cir.

---

[3] Dr. Spenko testified that he relied on the testimony of Mr. Wong relating to the Vectron Wave Battle for his infringement opinion relating to the Vectron Wave. Trial Tr. 250:5-10. Dr. Spenko explained that he did so because Mr. Wong said his testimony for the Vectron Wave Battle was the same for the Vectron Wave. *Id.* Dr. Spenko also testified on direct that the Vectron Wave code was not produced. *Id.*, at 99:15-17. But Dr. Spenko had the source code for the Vectron Wave Battle but could not read that code. *Id.* 250:11-24.

1996) (holding that conclusory expert testimony did not support a finding of infringement). For further example, Dr. Spenko offered a summary conclusion that PWM values in the Vectron Wave flow chart equates to motor speed and rotor speed without any factual basis of how that applies to the accused products and is reflected in the source code. *Id.*, at 242:4-6 (did not do any of the testing of Vectron Wave); 245:23-245:5 (did not confirm Vectron Wave flow chart against code). In other words, he just provided testimony that PWM and speed were equal, and programmed as such in the code, but cited nothing to support his opinion.

Dr. Spenko's conclusory infringement opinions relating to the Vectron Wave also contradict his admission that the speeds he identified were ***not*** programmed prior to vehicle operation and, therefore, were not predefined under the Court's claim construction. Specifically, Dr. Spenko admitted that the Vectron Wave product does ***not*** set the PWM percentage of "go down" or "fly up" until it goes through a start-up process. Trial Tr., at 245:13-247:5. In Dr. Spenko's own words – this is ***after*** vehicle operation, and is, therefore, not programmed in advance of vehicle of operation. *Id.*, at 245:24-246:247:5. Rehco attempted to repair Dr. Spenko's testimony, asking if the control systems for the accused products were programmed on the circuit board in advance. *Id.*, at 258:16-19. But the critical issue under this Court's claim construction is whether the *predefined speed* is programmed on the circuit board in advance of operation of the vehicle, not whether the control system is programmed in advance. Dkt. 256, at 10. And Dr. Spenko confirmed that Claim 1 requires the first and second speeds to be programmed on the circuit board in advance of operation. *Id.*, at 282:7-23. Here, the evidence relied on by Dr. Spenko does not support his opinion and just saying that something is so does not make it true, especially when there is no factual support and, in fact, the Vectron Wave flowchart says otherwise. *Dominion*, 725 Fed. Appx. at 986. Thus, the evidence admitted at trial shows that the Vectron

Wave's PWM percentages are determined *after* the vehicle is operated, and judgment as a matter of law of non-infringement on the Vectron Wave product is necessary.

Second, for the Flutterbye Fairy and the Atmosphere, Dr. Spenko also admitted he offered those opinions without looking at the source code. He offered lip service to the source code with a one liner that he "confirmed in source code." Trial Tr. 148:12-13, 155:5, 170:5-6, 172:16-25, 185:7-17. But just saying so, without any facts, is again not evidence. *Dominion*, 725 Fed. Appx. at 986. An expert's *ipse dixit*, without guidance as to how or why evidence supports his or her opinion, is not evidence sufficient to sustain an infringement verdict. *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007) (rejecting expert testimony and materials as insufficient to prove infringement where expert "stated in conclusory terms" that she relied on certain materials but "did not explain how her reliance on any of the other sources of information supported her inference"). Moreover, Dr. Spenko was not tendered as an expert in source code but in the field of robotics (Trial Tr. 78:10-11), thus any testimony from him regarding source code, even if not *ipse dixit*, is nothing more than unsupported lay opinion.

Similarly, Dr. Spenko offered a summary conclusion that PWM values in the flow charts equate to motor speed and rotor speed without any factual basis for how that applies to the accused products and is reflected in the source code. *Id.*, at 220:23-221:18 (did not test motor speed or rotor speed), 224:15-25 (did not measure motor speed), 225:1-227:3 (did not compare weights of products), 245:23-245:5 (did not confirm Vectron Wave flow chart against code). Dr. Spenko readily admitted that things like vehicle weight impact the product programming in the source code. *Id.*, 225:4-6. But Dr. Spenko failed to explain how two products (e.g. Fairy and Atmosphere), which have different product weights, would have to be programmed with the two claimed

predefined speeds. In other words, he just provided testimony that PWM and speed were equal and programmed in the code but cited nothing to support his opinion.

For example, Dr. Spenko cited +35 as the first speed being predefined that causes the vehicle to go up and -3 as the second speed being predefined that causes the vehicle to go down. *Id.*, at 147:10-23, 184:6-17. Dr. Spenko provided no evidence that this is actually how the product is programmed in the source code. *Id.* In contrast, the evidence shows this is not correct because the code itself reflects that the PWM values identified by Dr. Spenko are not speeds programmed in advance of operation that cause the vehicle to go up or down. *Id.* at 711:22-726:12.

This case is very similar to *Dominion Energy*. 725 Fed. Appx. at 986. In that case, the claim required a comparison between measured data to a controller voltage band. The Federal Circuit reversed the jury's verdict because the evidence was that the accused system compared the measured data to a single calculated voltage as opposed to the voltage band required by the claims. *Id.* So too here, the claims require a first speed being predefined (i.e. programmed in advance of vehicle operation) that causes the vehicle to go up and a second speed being predefined that causes the vehicle to go down. Ex. 19, at claim 1; Dkt. 256, at 10. Dr. Spenko did not point to any predefined speeds programmed in the code, pointing to PWM values that used a series of calculations to adjust height not speed, and Dr. Spenko admitted he did no testing or other analysis to confirm his opinion. And he provided no explanation for where these PWM values were found in the source code to establish that the PWM values were in fact speeds that caused the vehicle to go up or go down. Thus, any theory of infringement, both literal and under the doctrine of equivalents, fails as a matter of law because of Dr. Spenko's conclusory opinions lack any factual basis. *Dominion Energy*, 725 Fed. Appx. at 986. And this lack of evidence is fatal to Rehco's infringement case under this Court's claim construction. *Rohm and Haas*, 127 F.3d at 1092;

*Paradox Sec. Systems, Ltd. v. ADT Sec. Services, Inc.*, 2010 WL 2925404, *4-5 (Fed. Cir. 2010) (affirming a JMOL of non-infringement where the patentee's expert's statements regarding infringement were "entirely conclusory" and untethered to the evidence).

### B. The Damages Verdict Was Not Supported by Legally Sufficient Evidence.

Rehco has the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Damages must not be left to conjecture by the jury. *Promega Corp. v. Life Tech. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017). The patentee must "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features." *Power Integrations, Inc. v. Fairchild Semiconductor Internat'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). Without apportioning the value of the unpatented features in Spin Master's products from the value of the claimed invention, Rehco's damages theory fails and judgment as a matter of law is warranted. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (vacating a damages award where plaintiff did not apportion for "the incremental value that the patented invention adds to the end product"); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (vacating damages award and noting "the district court should have exercised its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"). Where Rehco has not sought damages under any other theory, judgment as a matter of law is appropriate. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (citation omitted).

#### 1. The Royalty Base Was Not Apportioned.

Rehco relied on Spin Master's revenues for sales of the accused products without apportioning those revenues. Rehco relies on the "smallest saleable patent practicing unit" doctrine, but ignores that the Federal Circuit requires, where the smallest saleable unit is a multi-

component product containing several non-infringing features, further apportionment is required. *Virnetx*, 767 F.3d at 1327. Rehco must come forward with some evidence of the claimed invention's value. *Id.*, at 1328.

The only exception to the rule of apportionment is the entire market value rule, which allows for the recovery of damages based on the value of an entire apparatus only when the patented feature is the ***sole driver*** of consumer demand or substantially creates the value of the component parts. *Power Integrations*, 904 F.3d at 978 (citations omitted). It is Rehco's burden to demonstrate that the patented feature is the sole driver of consumer demand. *Id.*, at 978. To do so, Rehco must do more than simply introduce conclusory testimony that the patented feature "is viewed as valuable, important, or even essential to the use of the [infringing product]." *Id.*, at 979 (citing *LaserDynamics*, 694 F.3d at 67).

First, Rehco's only evidence relating to customer demand is the lay opinion of its technical expert, Dr. Spenko, that the claimed invention added "a wow factor" (Trial Tr. at 132:16-23), "magic", and made the toys "cool" (*Id*. at 199:1-9). Dr. Spenko's lay testimony is irrelevant to the issue, as it is not evidence of the sole driver of demand. And his opinion was merely that consumers would not purchase these products absent the claimed control system—i.e., the control system is "essential." But "essential" is not enough because, as noted below, there was evidence of other valuable features. *Power Integrations*, 904 F.3d at 979. Dr. Spenko's testimony falls squarely within that rejected by the Federal Circuit, as he did not offer any opinion as to the portion of revenue attributable to the claimed invention. *Id.*; Trial Tr. 256:24-257:16.

Further, when a product contains multiple valuable features, it is not enough for Rehco to show that its patented control system is "essential" or that the accused products would not be commercially viable without the claimed control system, or even that consumers would not

purchase the accused products without the claimed control system. *Power Integrations*, 904 F.3d at 979. Rehco has to demonstrate other valuable features in the accused products ***do not*** cause consumers to purchase the product. *Id.* Here, the undisputed evidence is the opposite. Mr. Dermer testified that the "magic" of Spin Master's toys is that it is unexpected that they would fly, which is, in turn, due to the patented designs for the products using rotors integrated into the body of the toys.  The Flutterbye Fairy's propellers are her skirt, and the "magic" of the toy is that it's a doll that flies. Trial Tr., at 429:14-430:8. Likewise, the rotors in the Atmosphere are within the spherical cage, so it looks like a ball that is floating. *Id.*, at 430:21-431:7. And the Vectron Wave's rotors are hidden within the UFO. *Id.*, at 428:17-429:11.  And this was not disputed by Rehco. *Id.*, at 585:9-21; 585:1-24. These design features were all covered by Spin Master's separate patents on these features. Ex. 321, 322 (Vectron Wave); Ex. 323 (Fairy); Ex. 324 (Atmosphere). Additionally, the Vectron product was already a successful toy prior to addition of the auto hover feature, and Rehco did nothing to apportion this value. *Id.* at 255:15-18; 431:17-24. Where the accused products contain other valuable features, Rehco has the burden to "prove that those other features do not cause consumers to purchase the product." *Power Integrations*, 904 F.3d at 979. Rehco did not introduce any evidence to meet its burden, and judgment should be granted.

Rehco relies on *Exmark*, 879 F.3d 1332, to suggest that because it identified the smallest saleable patent practicing unit and because the claim is to a "vehicle" and not just the control system, Rehco was free to rely on the entirety of the Accused Products' revenues. That is wrong. Identifying a smallest saleable unit "does not insulate [the patent owner] from the 'essential requirement' that the 'ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'" *Finjan, Inc*, 879 F.3d at 1311. Instead, "if the smallest saleable unit ***contains non-infringing features***, additional apportionment is still

required." *Id.* (emphasis added). In *Exmark*, it was not just that the claim was to "a lawnmower" that justified using entire revenue as the base; the claim itself claimed known, conventional features of the lawnmower in addition to the novel baffles. *Exmark*, 879 F.3d at 1348. Thus, the infringing lawnmower did not contain any non-infringing features. *Id.* By contrast, claim 1 of the '866 patent, while directed to a "vehicle," only includes limitations related to a control system. Ex. 19, at claim 1. Even in *Exmark*, the Federal Circuit rejected Rehco's contention that no further apportionment is required where the claim covers the entire infringing product. *Exmark*, 879 F.3d at 1348 ("Nonetheless, '[w]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.'") (citations omitted).

### 2. The Royalty Rate Was Not Apportioned and Licenses Were Introduced Without Demonstrating Comparability.

Rehco failed to properly apportion its proposed royalty rate of 5% to ensure it was limited to the incremental value of the patented invention. *Exmark*, 879 F.3d at 1348. It is undisputed that Spin Master owns a number of patents regarding the innovative design of the accused products, including the integrated propeller designs, and those designs drove the value of the accused products. Exs. 321, 322, 323, 324. As a result, Rehco was required to downwardly adjust its rate to ensure that Rehco would only be compensated for the value of its control system and not unjustly compensated for Spin Master's own unique innovations driving the success of its products. *Exmark*, 897 F.3d at 1350 ("We are skeptical that other patented components of the mower bear no relation to the overall value of the accused mowers, which would influence the relative value of the patented baffle and thus the royalty rate."). Rehco failed to do so.

Specifically, the evidence at trial was that Rehco's license agreements were not straight licenses to the '866 patent but to specific Items described in those agreements. For example, Exhibit 191, licensed a Toy Satellite Item, which was described as having "a single rotor mechanical platform having 'sails' (in the form of solar panels) for counter rotation, and where propellers are integral to the style of the toy." Ex. 191. Likewise, Exhibit 198 licensed a drone Item described as having "four propellers enclosed in a cage, with auto-hover feature and object sensing". Ex. 198. Exhibit 201 licensed a Bumblebee Item, described as a Flying Bumblebee, shown as a bee with propellers in the middle of the body of the bee, similar to wings. Ex. 201. And Exhibit 190 describes an auto-hover sphere, necessitating a specific form of the Item. Ex. 190. Rehco did no apportionment of the value of its invention from the value of the Items specifically described in these agreements, and those agreements cannot support the damages verdict. *See, e.g., Mondis Tech. Ltd., v. LG Electronics, Inc. et al.*, No. 2:15-CV-4431-SRC at 30 (D. N.J. Sep. 24, 2019) ("Plaintiff's damages case, as a matter of law, is insufficient to support the damages verdict, due to the failure to apportion" the prior licenses relied upon for the royalty rate). Notably, Rehco did not introduce any evidence that it designed toys with propellers integrated into the body of the toy (like the Flutterbye Fairy) or with propellers within a spherical cage (like the Atmosphere) before Spin Master released those products. Instead, Rehco only pointed to its hand command prototype, where an astronaut hung below the propellers. Trial Tr. 426:10-427:9.

Rehco cites *Commonwealth* for the proposition that apportionment is built into the royalty rates where there is evidence concerning the actual or negotiated license rates for a patent-in-suit. This is wrong. In *Commonwealth*, the district court relied on actual negotiations **between the parties themselves** to set bounds on the reasonable royalty rate, noting "because the parties' discussions centered on a license rate for the [asserted patent], this starting point for the district

court's analysis already built in apportionment" because "the parties negotiated over the value of the asserted patent, 'and no more.'" 809 F.3d at 1303. No such negotiations between the parties exists here, and *Commonwealth* is inapplicable.

> ### i. Rehco's failure to establish comparability with the Item Licenses renders its royalty rate arbitrary

Additionally, to rely on past licenses to support a proposed royalty rate, the patentee must establish that they are "sufficiently comparable to the hypothetical license at issue in suit." *Virnetx, Inc.*, 767 F.3d at 1330. Rehco must establish that the licenses are both technologically and economically comparable to the hypothetical license. *Id.* Rehco failure to establish either renders its proposed royalty arbitrary. *LaserDynamics*, 694 F.3d at 81 (proposed royalty rate arbitrary where it "was untethered from the patented technology at issue and the many licenses thereto.").

Regarding technological comparability, Spin Master acknowledges that where the patent is specifically identified in a prior ***patent*** license, that will generally be evidence of technological comparability. But Rehco's licenses are to specific ***Items***, not to the '866 patent's control system. Thus, the Item licenses are technologically comparable only if the Items are actually embodiments of the '866 patent. And Rehco has no evidence that any of the licensed items embody the claims of the '866 patent because Rehco, and its expert, Dr. Spenko, testified he did not offer an opinion regarding any of Rehco's products and whether they were commercial embodiments. Trial Tr. 257:20-25. Absent that analysis, the licenses should have been excluded. *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP at *3 (E.D. Tex. May 25, 2017) ("While the comparability of previous licenses is generally fertile ground for cross-examination, a complete failure to provide any analysis regarding technological comparability warrants exclusion.").

Regarding economic comparability, it is improper as a matter of law for Rehco to rely on the Five Below license (Ex. 190) because, as Mr. Rehkemper admitted, it was entered into under the threat of litigation. Trial Tr. 593:13-21; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983). Additionally, all four license agreements relied upon by Rehco (Exs. 190, 191, 198, and 201) were entered into over 6 years after the hypothetical date of negotiation, making them "irrelevant for the hypothetical negotiation analysis." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77 (Fed. Cir. 1999) (excluding licenses dated 4 and 5 years after the hypothetical date of negotiation). Specifically, Ex. 190 was entered into in 2015; Ex. 191 was entered into in 2016; and Exs. 198 and 201 were entered into in 2019.

Further, no evidence was introduced demonstrating any economic comparability with any of these licenses. To the contrary, Steve Rehkemper testified:

- Ex. 190 - he did not know how many units had been sold under the Five Below license, and also testified that the products retailed at $5 and did not know if Five Below had any patent rights to the Item (Trial Tr. 594:5-595:17);

- Ex. 191[4] - he did not know the volume of sales, whether the product was even sold in the US, what royalties had been paid thus far, or whether MerchSource has any patent rights in the Item (Trial Tr. 592:21-593:9);

- Ex. 198 - he did not know the volume of sales or whether Kaliber had any patent rights in the Item (*Id.* 588:22-590:17);

---

[4] Ex. 198 is also problematic because the royalty rate is $1 per unit, unlike the other licenses including Spin Master's own licenses with Toytec, applying a percentage. Rehco never explained or introduced evidence regarding how a $1 royalty compares to a royalty rate, or how that dollar figure is relevant to the claimed invention.

- Ex. 201 - he did not know volume sales, total revenue, or whether Funtime had other patent rights in the Item; he also testified the product was only sold in the UK and not in the US (*Id.* 591:1-592:2).

Rehco's licenses showing that certain parties would pay a 5% royalty to sell specific *Items* "is not indicative of how much the parties would have paid to license a *patent*." *Finjan, Inc.*, 879 F.3d at 1312 (emphasis added).

Moreover, Mr. Rehkemper testified with respect to each of Rehco's license agreements, Rehco did not develop any of the Items. *Id.* at 571:3-7, 573:12-16, 575:16-17, 578:8-10. This differs from Spin Master's license with Toytec, where evidence was introduced regarding Toytec's development work on the Vectron Wave. *Id.* at 332:11-14; 350:2-4. Further, evidence was introduced that Toytec's system was much cheaper, and Spin Master was looking for ways to reduce cost on the Vectron Wave. *Id.* at 325:21-326:7; 331:18-332:3. Rehco did not account for *any* of the differences, either in Rehco's license agreements with third parties, or Spin Master's own license agreements, and this failure to demonstrate comparability leaves the jury to speculate. *Finjan, Inc.*, 879 F.3d at 1311-12.

Rehco is also wrong as a matter of law that economic comparability is purely a fact issue for the jury. Trial Tr. 668:10-16. Apportionment is a gatekeeping function for the Court before the matter reaches the jury. *Virnetx, Inc.*, 767 F.3d at 1328 ("[T]he district court should have exercised its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury."). Before licenses can be relied upon to support a damages theory, they must be found "sufficiently comparable" to the hypothetical negotiation. *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

No such finding was made here, and Rehco's license agreements are not legally sufficient evidence to support the jury's verdict[5].

## C. Spin Master is Entitled to Judgment as a Matter of Law on Willfulness.

Enhanced damages are reserved only for the most egregious cases. *Halo Elecs., Inc.*, 136 S.Ct. at 1932 (enhanced damages reserved for egregious infringement behavior). This conduct must be so egregious as to be considered "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or-indeed-characteristic of a pirate." *Id*. Rehco bears the burden of satisfying this high standard. *Id*. Viewing the entire trial record, Rehco unequivocally failed to meet its burden.

Rehco's evidence presented at trial fails to establish any deliberate or intentional infringing conduct by Spin Master. Rehco's claim for willful infringement stems solely from Spin Master's alleged knowledge of the '866 patent. However, Rehco must show more than mere knowledge to satisfy its burden. *Halo*, 136 S.Ct. at 1936; *Evonik Degussa GmbH v. Materia, Inc.*, 305 F.Supp.3d 563, 577 (D. Del. 2018). Specifically, Rehco relies on evidence that it showed a hand command flying toy prototype to Spin Master in December 2004 (Trial Tr. 319:4-320:19)—prior to the filing of the application that would eventually issue as the '866 Patent—in October 2005 (*Id*., at 321:5-23)—prior to the issuance of the '866 Patent—and in May 2008 (*Id*. at 326:19-329:20). Rehco introduced no evidence that Spin Master copied that prototype when it developed the Vectron Wave. Nor was there any evidence that Spin Master even could have copied the prototype if it wanted to, as there was no evidence that Spin Master learned anything about the control system utilized by Rehco's prototype. *Mercexchange, L.L.C. v. eBay, Inc.*, 275 F.Supp.2d 695, 720 (E.D.

[5] Likewise, Rehco's license agreements cannot support an established royalty rate as they: (1) were not paid or secured before infringement began; were not uniform in amount; one was paid under threat of litigation; and there is no evidence they are for comparable rights or activity under the patent. *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990); *Mobile Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1342 (D. Del. 1994).

Va. 2003) (finding that copying did not weigh in favor of enhanced damages where the defendant had no guidance from which the defendant could have copied the patented design). Again, Rehco points only to evidence that Spin Master knew of Rehco's prototype when it worked with Toytec on the Vectron Wave, but mere knowledge of a product is not evidence of copying. *VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F.Supp.2d 1072, 1074 (N.D. Cal. Oct. 24, 2007) (finding an admission from the defendant's CEO's that he was aware of the patentee's process "does not give rise to a reasonable inference that [defendant] copied [plaintiff's] claimed methods.").

Even if there were such evidence, that evidence would only be relevant to willfulness if the prototype actually practiced the '866 patent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) ("Evidence of copying [the patentee's product] is legally irrelevant unless the [product] is shown to be an embodiment of the claims."). But there is no evidence that the prototype Rehco provided to Spin Master actually practiced the '866 patent. And Rehco's expert, Dr. Spenko, testified that he was not offering any opinion on whether Rehco's prototypes practiced the '866 patent. Trial Tr. 257:23-25.

Rehco also did not introduce any evidence of any bad faith on the part of Spin Master based on its knowledge of the '866 patent—rather, the opposite. Spin Master consistently informed Rehco that it communicated with its external patent attorneys and engineers and did not infringe the '866 patent because the Vectron Wave did not set any predefined speeds. Trial Tr., at 339:10-23. This in and of itself suggests good faith by Spin Master. *Loggerhead Tools, LLC v. Sears Holding Corp.*, 2016 WL 6778881, *2 (N.D. Ill. Nov. 15, 2016) (Finding that "ongoing consultation with a patent lawyer remains a consideration and is 'highly probative evidence of good faith,'"). And this is the very same noninfringement defense Spin Master presented at trial.

This consistency extending back several years prior to litigation demonstrates that Spin Master's subjective intent was not to infringe the '866 patent, and mere evidence of two products that hover cannot be sufficient where the claims require more. *Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625, *4 (D. Del. 2016) (reasonableness of defense is pertinent to willfulness because defenses were developed *before* litigation).

Finally, Spin Master's continued sale of the Accused Products after initiation of this suit is not a proper basis for enhanced damages. *TecSec, Inc. v. Adobe, Inc.*, No. 1:10-cv-115, 2019 WL 1233882, at *2 (E.D. Va. Mar. 14, 2019) (granting JMOL of no willful infringement and finding continued sale of infringing products after filing suit "typical infringement behavior," particularly in light of nonfrivolous defenses maintained throughout the litigation). There is no basis for a reasonable juror to find willfulness on this record, and the Court should enter judgment. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,* 2017 WL 2190055, at *1 (E.D. Tex. May 18, 2017) (granting Rule 50(a) motion for JMOL of no willfulness where plaintiff presented only circumstantial evidence).

### D.    Spin Master is Entitled to Judgment as a Matter of Law on Rehco's Breach Claim.

Rehco's evidence at trial, under the plain language of the Helicopter Agreement, does not support the jury's verdict of breach. Rehco stipulated that the Havoc did not meet any of the Item descriptions under the Helicopter Agreement. Trial Tr. 821:6-10. Rehco's theory, instead, was that the Havoc was a modification or improvement of the Item, as defined in the Helicopter Agreement. *Id*. Contracts "must be construed as a whole, viewing each provision in light of the other provisions." *United States v. Rogers Cartage Co*., 794 F.3d 854, 861 (7th Cir. 2015). The Court's "'primary objective in construing a contract is to give effect to the intent of the parties.'" *Lane v.*

*Le Brocq*, No. 15 C 6177, 2016 WL 5955536, at *2 (N.D. Ill. Oct. 12, 2016). Unambiguous contract terms must be given their "plain and ordinary meaning." *Id.*

In its effort to meet its burden at trial, Rehco made two arguments: (1) the Havoc was a modification of the Item because it had stacked rotors and a pivot point; and (2) the Havoc was an improvement on Rehco's development work reflected in its patents. Neither argument is supported by substantial evidence, runs contrary to the plain language of the Helicopter Agreement, and is insufficient to support the jury's verdict as a matter of law.

1. No Substantial Evidence that the Havoc is a Modification of the Item.

It is Rehco's burden to show the Havoc is an "improvement, modification, enhancement or derivation **of the Item**" under the Helicopter Agreement. Ex. 1, at Para. 1.c. "Item" is a defined term. To determine if the Havoc is a modification/improvement, Rehco must compare the Havoc to the Item descriptions, contained in the Second Amendment to the Helicopter Agreement. Ex. 3. The only evidence at trial relating to Rehco's breach claim was Mr. Jeff Rehkemper's testimony.

First, Mr. Rehkemper testified the Havoc had two "stacked rotors." Trial Tr. 497:22-24. But he provided no testimony explaining how the Havoc's stacked rotors would be a modification of the rotors set forth in the Item descriptions. There was no evidence how those rotors were modified or improved under the Agreement. Significantly, Mr. Rehkemper compared the Havoc's stacked rotors to another Spin Master Helicopter – the Reflex. *Id.* at 495:17-22, 497:22-24. Importantly, even though the Reflex had dual rotors, it was covered by the separate Helix Commission Agreement. *Id.* at 495:4-22; 502:23-504:8. Thus, Mr. Rehkemper's testimony made clear that merely having dual rotors is not enough for a helicopter to fall within the Helicopter Agreement. Here, Rehco's breach claim was under the Helicopter Agreement. Evidence comparing the Havoc's dual rotors to another helicopter covered by a separate agreement is plainly

outside the four corners of the Helicopter Agreement and irrelevant. *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 463, 706 N.E.2d 882, 884 (Ill. 1999).

Second, Mr. Rehkemper testified the Havoc has "a pivotal connection between the propeller and the drive shaft" with a "leading edge of the rotor above the pivot point." Trial Tr. 497:25-498:6. But this is not in any Item description and Mr. Rehkemper provided no testimony linking this feature in the Havoc to an Item description or any purported modification. This makes sense because Mr. Rehkemper explained that the Havoc design was different, as it used the Bell-Hiller stabilization design used in real world helicopters. *Id.* at 512:9-20. To the extent Rehco is offering "a pivotal connection between the propeller and the drive shaft" with a "leading edge of the rotor above the pivot point" as evidence under the Helicopter Agreement, that too improperly reaches outside the plain language of the agreement. *Air Safety, Inc.,* 185 Ill.2d at 463.

Third, Mr. Rehkemper offered testimony that the Havoc did not have "safety guards." Trial Tr. 518:4-520:6. But he never explained how this was related to the Item descriptions or modifications of the Item. To the extent Rehco was suggesting that rotors without safety guards were also somehow covered by the Item description or a modification of the Item, that is contrary to the plain language of the Helicopter Agreement, which requires rotors with safety guards. *See* Ex. 3, at Item descriptions ("patent safety guards"); *CSX Transp., Inc. v. Five Star Enter. of Ill., Inc.*, No. 16 C 9833, 2018 WL 6735705, *8 (N.D. Ill. Dec. 24, 2018) (granting summary judgment of no breach on defendant's breach claim where "defendants' proposed reading ignores the plain language of the contract and is thus contrary to Illinois law's emphasis on the language used by the parties when they form a contract.").

In sum, Rehco's entire breach of contract claim is based on ***different*** features in the Havoc, contending those differences were just "modifications". Trial Tr. 932:1-25. This interpretation

completely deletes the Item descriptions, which is improper. *Local 75, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Schreiber Foods, Inc.*, 213 F.3d 376, 380 (7th Cir. 2000). Under Rehco's theory, it never explains how the Havoc is a modified Item, but instead, contends any differences render it a modification, which is nonsensical. Rehco's theory also means that any toy helicopter would fall within the modifications clause, and the Court already rejected this position under the plain language of the Helicopter Agreement. Dkt. 187, at 24, n.2. And this makes sense where such an overbroad interpretation of the contract results in the modifications clause swallowing the entire agreement and renders absurd results. *Wachta v. First Federal Sav. & Loan, Ass'n.,* 103 Ill.App.3d 174, 181, 430 N.E.2d 708, 714 (Ill. App. Ct. 1981) (holding that contracts will be interpreted "reasonably to avoid absurd results").

Rehco's breach theory improperly reads the modifications provision (Ex. 1, at 1.c.) in isolation, and does not consider the contract as a whole. *Fontana v. TLD Builders, Inc.* 362 Ill.App.3d 491, 510-11, 840 N.E.2d 767 (2005). And Rehco's reading of Paragraph 1.c. renders other provisions in the Helicopter Agreement meaningless, such as Paragraph 19.c. Paragraph 19.c. requires that "additional potentially marketable products" be "added to the scope of this Agreement and added to the definition of the 'Item' herein only through the execution of an acknowledgment by both Parties that expressly refers to this Agreement." Ex. 1, at 19.c. Spin Master and Rehco performed under Paragraph 19.c. at least twice by amending the Helicopter Agreement to add additional Items. Exs. 2 and 3; *Dispatch Automation, Inc. v. Richards,* 280 F.3d 1116, 1119 (7th Cir. 2002) (common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons). The jury's verdict of breach is contrary to the plain language of the agreement, renders the absurd result that any toy helicopter would fall within the scope of the agreement, and must be overturned.

In the vacuum of any evidence, Rehco then waved unrelated helicopter patents in front of the jury, but never provided any evidence linking those patents to the Items. And Mr. Rehkemper admitted that Rehco did not have a claim for patent infringement on the Havoc. Trial Tr. 502:15-17. To the extent Rehco is offering its patents as evidence of anything under the Helicopter Agreement, that is legal error because it is outside the plain language of the agreement. *Air Safety, Inc.,* 185 Ill.2d at 463. Essentially, Rehco's argument boiled down to the idea that Rehco developed helicopters and patented those helicopters, therefore, it was owed royalties for the Havoc, regardless of what the Helicopter Agreement says. But Rehco's breach claim must be rooted in the actual language of the Helicopter Agreement, not what they wish that Agreement said. *Gordon v. Tiger Illinois,* 2011 WL 10483249, at *6 (Ill. App. 2011) (noting "Gordon might have believed that the coal leases gave him timber rights, but the leases themselves do not include timber rights.").

2.    No Substantial Evidence that the Havoc is an Improvement of the Item.

Rehco offered U.S. Patent No. 7,815,482, listing Alexander Van de Rostyne into evidence (Ex. 272), which covers the Havoc. Trial Tr. 558:25-559:1. Rehco pointed out that some of its patents were listed in the prior art for the Rostyne patent. *Id.*, 559:18-20. Again, Rehco offered no evidence linking its helicopter patents and the Helicopter Agreement. This evidence is irrelevant to the breach of contract claims. Additionally, there is no evidence that Mr. Rostyne actually had the Rehco patents or those were cited by the Patent Examiner or patent attorney obtaining that patent. More importantly, there was zero evidence in the record to support Rehco's claim in closing that Mr. Rostyne "had them and he improved on them and came up with this [indicating Havoc]." *Id.*, at 931:2-25. Rehco offered no evidence of what Mr. Rostyne actually used when designing the Havoc, let alone any evidence he possessed, or that he knew about Rehco's helicopters, the

Helicopter Agreement, or Rehco's patents. Like patent infringement claims, to even plead a colorable inference that an accused infringer had pre-suit knowledge of a patent, a plaintiff must plead more than simply a patent was cited during prosecution. *Princeton Digital Image Corp. v. Ubisoft Entm't,* No. 13-335-LPS-CJB, 2017 WL 6337188 at *1 (D. Del. Dec. 12, 2017). Instead, the only evidence that was introduced at trial was that Rehco sought and obtained five patents related to toy helicopters. Trial Tr., at 492:7-11. Critically, Rehco did not offer any testimony or evidence that the five patents were related to the Item descriptions, the Helicopter Agreement or, more importantly, to any modification or improvement of the Item. As a matter of law, citation to five Rehkemper patents in Mr. Rostyne's patent is legally insufficient to support Rehco's argument that the Havoc was an "improvement" of the Items described in the Helicopter Agreement, and judgment as a matter of law in favor of Spin Master on Rehco's breach claim is required.

DATED:  January 16, 2020                    Respectfully submitted,

                                            Erise IP, P.A.


                                            By: /s/ *Megan J. Redmond*
                                            Megan J. Redmond (#6280970)
                                            Eric A. Buresh (*pro hac vice*)
                                            Caroline A. Bader (*pro hac vice*)
                                            6201 College Blvd., Suite 300
                                            Overland Park, Kansas  66211
                                            (913) 777-5600
                                            (913) 777-5601 – fax
                                            megan.redmond@eriseip.com
                                            carrie.bader@eriseip.com

Nicholas T. Peters
Joseph F. Marinelli
Fitch, Even, Tabin & Flannery
120 South LaSalle Street
Suite 1600
Chicago, Illinois  60603
(312) 577-7000
(312) 577-7007 – fax
ntpete@fitcheven.com
jmarinelli@fitcheven.com

*Attorneys for Spin Master, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record have been served with a copy

of this document via e-mail and the Court's CM/ECF system this 16th day of January, 2020.

/s/ *Megan J. Redmond*
Megan J. Redmond