**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **REHCO, LLC,** | |
| Plaintiff, | |
| v. | CASE NO. 13-CV-02245 |
| **SPIN MASTER, LTD.,** | |
| Defendant. | |

## REHCO, LLC'S RESPONSE IN OPPOSITION TO SPIN MASTER, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ……………………………………………………..  1

II.   LEGAL STANDARDS …………………………………………………..  1

III.  ARGUMENT …………………………………………………………..  2

A.    There Was a Legally Sufficient Evidentiary Basis for the Jury's
      Finding of Infringement …………………………………………...  2

B.    There Was a Legally Sufficient Evidentiary Basis for the Jury's Patent
      Damages Award …...…………………………………………………  8

      1.    The royalty base was properly apportioned …………………....  10

      2.    The royalty rate was properly apportioned and there was sufficient
            evidence of license comparability …………………….....................  13

C.    There Was a Legally Sufficient Evidentiary Basis for the Jury's
      Finding of Willful Infringement …………………………………….....  15

      1.    There was evidence that Spin Master did not make a good-faith
            effort to avoid infringing the '866 patent and did not attempt to
            design around the '866 patent …...…………………………………  15

      2.    There was evidence that Spin Master tried to cover up its
            infringement …………………………………………………………  16

      3.    There was evidence that Spin Master did not reasonably believe it
            did not infringe or that the '866 patent was invalid ……..………  17

      4.    There was evidence that Spin Master did not act consistently with
            the standards of behavior for its industry ………..………………...  19

      5.    There was evidence that Spin Master copied a product of Rehco's
            that is covered by the '866 patent ………………………………  20

D.    There Was a Legally Sufficient Evidentiary Basis for the Jury's
      Finding that Spin Master Breached the Helicopter Agreement ..………  23

IV.   CONCLUSION ...…………………………………………………………  25

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                       <u>Page(s)</u>

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012) ………………………………………………   14

*Alpex Computer Corp. v. Nintendo Co.,*
    102 F.3d 1214 (Fed. Cir. 1996) ………………………………………………   8

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001) ………………………………………………   21

*Campbell v. Peters,*
    256 F.3d 695 (7th Cir. 2001) …………………………………………………   2

*Cave Consulting Group, Inc. v. Truven Health Analytics Inc.,*
    No. 15-cv-02177, 2017 WL 4772348 (N.D. Cal. Oct. 23, 2017) ……………   12

*Chamberlain Group, Inc. v. Techtronic Industries Co., Ltd.,*
    315 F. Supp. 3d 977 (N.D. Ill. 2018) …………………………………………   1

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.,*
    809 F.3d 1295 (Fed. Cir. 2015) ………………………………………………..   10-13

*Damato v. Jack Phelan Chevrolet Geo, Inc.,*
    927 F.Supp. 283 (N.D. Ill. 1996) ……………………………………………..   4

*Dominion Energy, Inc. v. Alstom Grid LLC,*
    725 Fed. Appx. 980 (Fed. Cir. 2018) …………………………………………   6, 7

*DSU Medical Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006) ………………………………………………   2

*Elbit Systems Land and C4I Ltd. v. Hughes Network Systems, LLC,*
    No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017)   11

*Emmel v. Coca-Cola Bottling Co. of Chicago,*
    95 F.3d 627 (7th Cir. 1996) …………………………………………………...   2

*Ericsson, Inc. v. D-Link Systems, Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014) ………………………………………………..   10, 14

*Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC,*
    879 F.3d 1332 (Fed. Cir. 2018) ………………………………………………   10, 15

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ....................................................... 11

*Georgetown Rail Equip. Co. v. Holland LP*,
    No. 6:13-cv-366, 2016 WL 3346084 (E.D. Tex. June 16, 2016) ............... 22

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S.Ct. 1923 (2016) .................................................................. 21

*KFx Medical Corp. v. Arthrex Inc.*,
    No. 11-cv-1698, 2014 WL 11970553 (S.D. Cal. Feb. 18, 2014) ............... 6, 9

*Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*,
    No. 09-cv-03339, 2019 WL 4242482 (N.D. Ill. Sept. 6, 2019) ................. 1

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
    2016 WL 6778881 (N.D. Ill. Nov. 15, 2016) ...................................... 18, 19

*Masimo Corp. v. Philips Electronic N. Am. Corp.*,
    No. 09-80-LPS, 2015 WL 2379485 (D. Del. May 18, 2015) .................... 6, 9

*Mathur v. Board of Trustees of Southern Illinois Univ.*,
    207 F.3d 938 (7th Cir. 2000) ......................................................... 1, 6

*MercExchange, L.L.C. v. eBay, Inc.*,
    275 F.Supp.2d 695 (E.D. Va. 2003) ................................................. 20-21

*Mondis Tech. Ltd. v. LG Electronics*,
    407 F.Supp.3d 482 (D. N.J. 2019) ................................................... 13

*Paradox Sec. Systems, Ltd. v. ADT Sec. Services, Inc.*,
    388 Fed. Appx. 976 (Fed. Cir. 2010) ................................................ 8

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ...................................................... 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018) ........................................................ 12

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133, 120 S.Ct. 2097 (2000) ............................................... 2, 4,
                                                                                      12, 24

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989) ...................................................... 15

*Rohm and Haas Co. v. Brotech Corp.*,
    127 F.3d 1089 (Fed. Cir. 1997) ...................................................... 8

*Schandelmeier-Bartels v. Chi. Park Dist.,*
    634 F.3d 372 (7th Cir. 2011) ……………………………………………… *passim*

*Symbol Tech., Inc. v. Opticon, Inc.,*
    935 F.2d 1569 (Fed. Cir. 1991) ……………………………………………… 5

*TecSec, Inc. v. Adobe, Inc.,*
    No. 1:10-cv-115, 2019 WL 1233882 (E.D. Var. 14, 2019) ………………….. 16

*Tellabs Operations, Inc. v. Fujitsu Ltd.,*
    283 F.R.D. 374 (N.D. Ill. 2012) …………………………………………… 4

*Versata Software, Inc. v. SAP America, Inc.,*
    717 F.3d 1255 (Fed. Cir. 2013) …………………………………………… 6, 8

*Virnetx, Inc. v. Cisco Systems, Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014) ……………………………………………….. 11, 14

*VNUS Medical Tech., Inc. v. Diomed Holdings, Inc.,*
    527 F.Supp.2d 1072 (N.D. Cal. 2007) …………………………………….. 21

*Waterton Polymer Products USA, Inc. v. EdiZONE, LLC,*
    No. 2:12-cv-17 TS, 2014 WL 1908433 (D. Utah May 13, 2014) …………… 8

*WBIP, LLC v. Kohler Corp.,*
    829 F.3d 1317 (Fed. Cir. 2016) …………………………………………… 15

*Yoon Ja Kim v. ConAgra Foods, Inc.,*
    465 F.3d 1312 (Fed. Cir. 2006) …………………………………………… 8

## **Statutes and Rules**

FED. R. CIV. P. 50(a) ………………………………………………………… 1

FED. R. EVID. 103(a) ………………………………………………………… 6

FED. R. EVID. 705 …………………………………………………………….. 5

## I.  INTRODUCTION

After a full and fair trial, the jury in this matter unanimously found in favor of Rehco on every issue it was tasked with deciding.  Despite this, Spin Master effectively asks the Court to disregard the jury's findings and focus only on select excerpts of evidence that it contends do not support the jury's verdict while ignoring the voluminous evidence that does.  This fails to conform to the proper legal standard, which requires the Court to construe the facts strictly in favor of Rehco while disregarding all evidence favorable to Spin Master.

Spin Master is not entitled to judgment as a matter of law (JMOL) on any issue.  Just because Spin Master does not like the result it received does not mean it can replace its opinion for that of the jury.  For the reasons stated herein, Spin Master's motion should be denied, and the jury's verdict should be allowed to stand.

## II.  LEGAL STANDARD

"Under Rule 50(a) of the Federal Rules of Civil Procedure, a district court may enter judgment against a party who has been fully heard on an issue during trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*, No. 09-cv-03339, 2019 WL 4242482, at *3 (N.D. Ill. Sept. 6, 2019) (quoting FED. R. CIV. P. 50(a)).  This is a stringent standard under which the Court "construe[s] the facts strictly in favor of the party that prevailed at trial." *Schandelmeier-Bartels v. Chi. Park Dist.,* 634 F.3d 372, 376 (7th Cir. 2011); *see also Chamberlain Group, Inc. v. Techtronic Industries Co., Ltd.,* 315 F. Supp. 3d 977 (N.D. Ill. 2018), *reversed on other grounds*, 935 F.3d 1341 (Fed. Cir. 2019).  The operative question is whether, based on the evidence presented, "no rational jury could have found for the plaintiff." *Mathur v. Board of Trustees of Southern Illinois Univ.,* 207 F.3d 938, 941 (7th Cir. 2000).

On a motion for judgment as a matter of law ("JMOL"), "the court does not make credibility determinations or weigh the evidence." *Schandelmeier-Bartels,* 634 F.3d at 376. In addition, the Court <u>must</u> "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 151, 120 S.Ct. 2097 (2000). In sum, "[j]udgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001). "A motion for judgment as a matter of law should be granted only when there can be but one conclusion from the evidence." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 636 (7th Cir. 1996).[1]

## III.     ARGUMENT

### A.     There Was a Legally Sufficient Evidentiary Basis for the Jury's Finding of Infringement.

Rehco presented a legally sufficient evidentiary basis for the jury's finding of infringement, including the jury's implicit finding that the accused products meet the first and second "predefined" speed limitations. Rehco's technical expert, Dr. Spenko, provided detailed testimony, based on Spin Master's own documents, testimony, and source code, that these limitations were met by each accused product literally and under the doctrine of equivalents.[2] The below table identifies this evidence.

---

[1] The Federal Circuit "reviews a trial court's JMOL rulings after a jury verdict by reapplying the district court's own standard." *See, e.g., DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006).

[2] Spin Master stipulated that Dr. Spenko was a person of ordinary skill in the art as of the priority date of the '866 patent. TT 68:2-10.

| Accused Product | Evidence that the First "Predefined" Speed Limitation is Met | Evidence that the Second "Predefined" Speed Limitation is Met |
|---|---|---|
| Vectron Wave | TT 102:11-107:2, 111:14-118:19, 258:11-22, 259:7-24, 260:21-262:4.<br><br>Tr. Exs. 23, 28, 35, 36.<br><br>Wong Depo., 28:24-29:12, 29:13-31:16, 39:5-41:3, 76:20-77:22.[3] | TT 118:20-126:19, 258:11-22, 259:7-24, 260:21-262:4.<br><br>Tr. Exs. 23, 28, 35, 36.<br><br>Wong Depo. 25:7-18, 27:8-28:24, 29:13-31-16, 39:5-41:3, 76:20-77:22. |
| Atmosphere | TT 148:15-155:7, 172:7-173:3, 258:11-22.<br><br>Tr. Exs. 25, 47[4], 326.<br><br>Wong Depo. 76:20-77:22, 85:9-86:12, 110:15-113:2. | TT 163:16-170:10, 172:7-173:3, 258:11-22.<br><br>Tr. Exs. 25, 47, 326.<br><br>Wong Depo. 76:20-77:22, 85:9-86:12, 110:15-112:23. |
| Flutterbye Fairy | TT 185:7-191:21, 258:11-22.<br><br>Tr. Exs. 26, 47, 327.<br><br>Wong Depo. 76:20-77:22, 85:9-86:12, 109:4-12, 110:15-112:23. | TT 185:7-16, 191:22-195:19, 258:11-22.<br><br>Tr. Exs. 26, 47, 327.<br><br>Wong Depo. 76:20-77:22, 85:9-86:12, 109:4-12, 110:15-112:23. |

Contrary to Spin Master's assertion, Dr. Spenko's opinions were based on much more than reviewing user manuals and playing with products. For each accused product, Dr. Spenko reviewed Spin Master's technical documentation and testimony, including the testimony of Spin Master's Director of Engineering, T.W. Wong. Dr. Spenko also performed an inspection of the

---

[3] "TT" refers to Trial Transcript. "Tr. Ex." refers to the corresponding Trial Exhibit. "Wong Depo." refers to the deposition testimony of T.W. Wong, Spin Master's Director of Engineering, that was presented at trial and marked as Tr. Ex. 329. *See* Dkt. 298-1.

[4] Spin Master represented that the flow chart for the Flutterbye Fairy (Tr. Ex. 47) is also for the Atmosphere. TT 144:6-145:5; *see also* Depo. Spin Master (Edwin Steele Corp. Rep.) 67:11-22 (Sept. 18, 2014) (Dkt. 238-5). Spin Master also confirmed that Tr. Ex. 47 was an accurate representation of the operation of the Atmosphere and Flutterbye Fairy products. TT 782:1-17; *see also* Depo. Spin Master (Edwin Steele Corp. Rep.) 75:5-8 (Dkt. 238-5).

accused products and their underlying source code.[5]  Dr. Spenko then rendered his opinion that

each accused product infringes the '866 patent, both literally and under the doctrine of

equivalents, based on his review of these materials.[6]  Furthermore, Dr. Spenko's opinions were

not presented to the jury in isolation.  Spin Master's technical documentation on which his

opinions were based was entered into evidence for the jury to consider.  *See* Evidentiary Table.

The cited evidence, when construed strictly in favor of Rehco as required, clearly provides a

legally sufficient evidentiary basis for the jury's finding of infringement.

On the other hand, contrary to the proper legal framework, Spin Master improperly

focuses only on the evidence it views as favorable to Spin Master.  On a motion for JMOL, the

Court must "disregard all evidence favorable to the moving party that the jury is not required to

believe."  *Reeves,* 530 U.S. at 151.  Further, all other evidence must be strictly construed in favor

of Rehco.  *Schandelmeier-Bartels,* 634 F.3d at 376.  Spin Master's failure to acknowledge the

evidence presented at trial, and its improper reliance on evidence that the jury considered but

---

[5] It was not disputed that source code for the Vectron Wave exists.  Spin Master simply did not produce the source code despite being granted the right by ToyTec to, among other things, reproduce and modify all rights, information, and materials, which would include source code, pertinent to the IR range detection technology in the Vectron Wave.  *See* Tr. Ex. 110, Sections 2 and 3.  In other words, Spin Master could have produced the source code and failed to do so. Spin Master should not be permitted to now use its failure to comply with its discovery obligations as a sword against Rehco.  Rather, if the existence of a document is established, the failure to produce it may support a negative inference, which is a question resolved by fact finders weighing the credibility of the witnesses, which they jury in this case did to the detriment of Spin Master.  *See e.g., Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F.Supp. 283, 290 (N.D. Ill. 1996); *Tellabs Operations, Inc. v. Fujitsu Ltd.,* 283 F.R.D. 374, 382 (N.D. Ill. 2012) (the "[f]ailure to produce evidence that is uniquely available to one party permits, but does not compel, the inference that the evidence, if produced, would have been unfavorable") (collecting Seventh Circuit cases on this point).

[6] Spin Master does not attack Dr. Spenko's analysis under the doctrine of equivalents except to summarily say that it was conclusory.  SMT Br., pp. 5, 8 (Dkt. 299).  Dr. Spenko provided a detailed analysis for each accused product under the doctrine of equivalents including particularized testimony and linking argument as to the insubstantiality of the differences, if any, between the claimed invention and the accused products.  TT 114:11-118:19, 123:19-126:19, 152:10-155:7, 168:4-170:9, 189:3-191:21, 194:6-195:19.  Spin Master's contention that this was "conclusory" is incorrect and a misrepresentation of the evidence.

ultimately found unpersuasive, are defects that permeate its analysis concerning each of the accused products.

With respect to the Vectron Wave, Spin Master's contention that Dr. Spenko provided no testimony regarding how the product was programmed is false. SMT Br., p. 5 (Dkt. 299).[7] Dr. Spenko relied on Tr. Ex. 28, which Spin Master's own witness confirmed was an accurate representation of how the Vectron Wave operated and was programmed. Tr. Ex. 28; TT 106:24-107:2, 113:19-114:10; Wong Depo. 39:5-41:3. Dr. Spenko relied on Mr. Wong's testimony as to the functionality of the Vectron Wave, including that it has a processor that is programmed with a table that has predefined increases and decreases to speed to cause the Vectron Wave to go up or down depending on the receipt or non-receipt of the one or more signals emitted by the Vectron Wave. Wong Depo. 25:7-18, 27:8- 28:24-31:16, 39:5-41:3, 76:20-77:22. Finally, Dr. Spenko's detailed testimony with respect to the Vectron Wave's infringement of the '866 patent is evidence that supports the jury's verdict. *See* TT 102:11-107:2, 111:14-126:19, 258:11-22, 259:7-24, 260:21-262:4.[8, 9] Dr. Spenko offered this testimony, without objection, providing a legally sufficient evidentiary basis for the jury's infringement finding.

Rehco also presented a legally sufficient evidentiary basis that the "predefined" speed limitations are met by the Atmosphere and Flutterbye Fairy products. Dr. Spenko testified that both products have a circuit board, programmed in advance of vehicle operation, that sets the

---

[7] References to "SMT Br." refer to Spin Master's motion for JMOL (Dkt. 299).

[8] Even if Dr. Spenko had merely testified in a conclusory fashion, which he did not, that would have been sufficient to support the jury's finding. *See Symbol Tech., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575-76 (Fed. Cir. 1991) ("In short, Symbol was permitted to rest its prima facie case on Barkan's expert testimony, including charts, that the patents were infringed, and the [fact-finder] was free to accept or reject that evidence."); FED. R. EVID. 705.

[9] Spin Master's contention that Dr. Spenko should have offered testimony on the source code for the Vectron Wave Battle to prove infringement for the Vectron Wave is ridiculous. The Vectron Wave Battle is a different product and Spin Master has consistently argued throughout this case that it operates entirely differently than the Vectron Wave. *See* SMT 2nd MSJ, p. 11 (Dkt. 230) (stating "these products operate completely differently").

speed of the propelling means to a first speed when the one or more signals are received and a second speed when none of the signals are received.  TT 148:15-155:7, 163:16-170:10, 172:7-173:3, 258:11-22, 185:7-195:19, 258:11-22.  He testified unequivocally that in the accused products, the claimed first and second speeds are programmed on the circuit board in advance of operation of the accused products.  *Id*.  This was not based on conjecture, but rather on Spin Master's own documentation and testimony, as well as Dr. Spenko's review of the source code for these products.  *Id*.[10]  This is a legally sufficient evidentiary basis from which a rational jury could, and did, find that the accused products infringe.  *See Mathur,* 207 F.3d at 941.

Spin Master's contention that Dr. Spenko only offered conclusory testimony that PWM values indicate speed is also incorrect.  Dr. Spenko provided detailed testimony explaining how and why PWM values are indicative of speed, both generally as well as with respect to each accused product.  TT 84:7-86:17, 264:1-18; Evidentiary Table.  Unlike the situation in *Dominion Energy* (discussed *infra*), Dr. Spenko's testimony did not focus on the wrong aspect of the accused products.  *See* 725 Fed. Appx. 980, 985-86 (Fed. Cir. 2018).

Further, the fact that the accused products may go through a start-up, or initialization, process does not mean they are not programmed in advance of vehicle operation, including having pre-programmed increments and decrements to speed depending on the receipt or non-

---

[10] Spin Master's contention that Dr. Spenko was not qualified to offer his opinions on infringement is incorrect and should be rejected.  First, Spin Master stipulated that Dr. Spenko qualified as a person of ordinary skill in the art.  TT 68:2-10.  Second, Spin Master did not object to any of Dr. Spenko's opinions, including those regarding source code, that Spin Master now incorrectly contends were improper lay opinions.  SMT Br., p. 7 (Dkt. 299).  Spin Master has waived these arguments.  FED. R. EVID. 103(a).  In addition, a motion for JMOL is not the proper mechanism to address questions of admissibility.  *See Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013); *KFx Medical Corp. v. Arthrex Inc.*, No. 11-cv-1698, 2014 WL 11970553, at *3 (S.D. Cal. Feb. 18, 2014); *Masimo Corp. v. Philips Electronic N. Am. Corp.,* No. 09-80-LPS, 2015 WL 2379485, at *20 (D. Del. May 18, 2015).  Further, on a motion for JMOL it is improper for the Court to make credibility determinations or weigh the evidence, which is exactly what Spin Master's motion for JMOL asks the Court to do.  *See Schandelmeier-Bartels,* 634 F.3d at 376

6

receipt of the one or more signals transmitted by each accused product.[11]  Pursuant to '866 patent, claim 1, what must be "predefined" – *i.e.,* "programmed on circuit board 136 in advance of operation of the vehicle" – is one or more speed(s) that cause the vehicle to gain altitude and one or more speed(s) that cause the vehicle to lose altitude.  As discussed *supra*, Rehco presented a legally sufficient evidentiary basis that these limitations are met by each accused product literally and under the doctrine of equivalents.  The fact that the accused products may employ a start-up process, based on pre-programmed code, and then increment or decrement the propeller speed based on pre-programmed increments and decrements, does not alter this conclusion or render the products non-infringing.[12]

Spin Master's reliance on a series of Federal Circuit cases regarding unsupported and conclusory expert testimony is also unavailing.  For example, in *Dominion Energy, Inc. v. Alstom Grid LLC,* 725 Fed. Appx. 980 (Fed. Cir. 2018) the Federal Circuit rejected expert testimony that was "conclusory, unsupported, contrary to the evidence in the case, or not directed to the claim limitation at issue."  725 Fed. Appx. at 986.  The Federal Circuit noted that the expert "did not cite any particular documents to support his position," and that his testimony was actually contradicted by the evidence.  *Id.*  In contrast, in the present case Dr. Spenko's testimony was not conclusory and was based on Spin Master's technical documentation, testimony, and source code.  *See* Evidentiary Table.

---

[11] Spin Master's own expert, Dr. Janét, agreed that the source code in the accused products, including the Vectron Wave, was programmed in advance of vehicle operation, including the pre-programmed values to increment or decrement speed based on the receipt or non-receipt of the one or more signals.  *See* TT 771:10-772:3, 773:18-774:5, 776:6-21, 783:15-784:21, 6:14-787:6.

[12] Contrary to Spin Master's statement, Dr. Spenko never testified that "things like vehicle weight impact the product programming in the source code."  SMT Br., p. 7; TT 225:4-6.  Dr. Spenko merely stated that "[w]eight is an important factor when you're trying to get something to fly."  *Id.*  This is yet another blatant misrepresentation of the evidence by Spin Master.

Similarly, Spin Master's reliance on *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089 (Fed. Cir. 1997) is misplaced. *Rohm* involved a bench trial where the court, serving as the fact finder, determined that conclusory expert testimony did not warrant a finding in favor of the patentee. 127 F.3d at 1092.[13] On a motion for JMOL, "the court does not make credibility determinations or weigh the evidence." *Schandelmeier-Bartels,* 634 F.3d at 376. In the present case, the jury already made such credibility determinations and found in favor of Rehco based on the evidence presented, including Dr. Spenko's non-conclusory and detailed testimony.[14]

In sum, Rehco presented a legally sufficient evidentiary basis from which a rational jury could, and did, find that the accused products infringe the '866 patent. As such, Spin Master's motion for JMOL should be denied.

**B.    There Was a Legally Sufficient Evidentiary Basis for the Jury's Patent Damages Award.**

The Federal Circuit has held that a defendant should not, "under the guise of sufficiency of the evidence" raise questions related to admissibility. *See Versata*, 717 F.3d at 1264. In other words, questions about the admissibility of evidence should not be addressed via a motion for JMOL. "Such questions should be resolved under the framework of the Federal Rules of

---

[13] *See also Waterton Polymer Products USA, Inc. v. EdiZONE, LLC*, No. 2:12-cv-17 TS, 2014 WL 1908433, at *2 (D. Utah May 13, 2014) (distinguishing *Rohm* on the basis that in *Rohm* the patentee "offered nothing more than its expert's general opinion that the accused product or process infringed the patents").

[14] The other cases relied on by Spin Master are similarly unavailing. *See Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (rejecting conclusory expert testimony based on analogy as opposed to evidence regarding the accused products); *Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1222 (Fed. Cir. 1996) (rejecting conclusory testimony under doctrine of equivalence that was devoid of any analysis and contrary to positions taken by the patentee during prosecution of the patent-in-suit); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007) (rejecting conclusory and unreasonable interpretation of marketing materials as forming adequate basis for infringement); *Paradox Sec. Systems, Ltd. v. ADT Sec. Services, Inc.*, 388 Fed. Appx. 976, 982 (Fed. Cir. 2010) (finding that conclusory expert testimony that failed to even identify any corresponding structure was insufficient).

Evidence." *Id.*; *see also KFx Medical Corp.*, 2014 WL 11970553, at *3 (denying JMOL on damages because arguments were directed to the admissibility of the evidence, not the sufficiency of the evidence); *Masimo Corp.,* 2015 WL 2379485, at *20 (holding that challenges to admissibility of evidence are improper on motion for JMOL). As such, Spin Master's motion for JMOL is not the proper context to consider Spin Master's arguments, which go to the admissibility of the evidence, not the question of whether the jury's patent damages award is supported by the evidence.

When the proper question is considered – *i.e.,* was the jury's patent damages award supported by substantial evidence – the answer must be yes. The jury awarded Rehco five percent of Spin Master's gross revenues from its sales of the accused products in the United States. This was supported by Spin Master's revenue information and two Rehco licenses for the '866 patent, which had a royalty of five percent of gross revenues. *See* Tr. Exs. 190, 201, 215. Spin Master's contention that the question of damages was left to conjecture by the jury is unsupported by the record. The jury awarded Rehco the damages it sought to the penny, which were calculated by applying a properly apportioned royalty rate (five percent of gross revenues) based on Rehco's own licenses for the '866 patent to a properly apportioned royalty base (Spin Master's revenues for the accused products).

Setting this aside, even if the Court considers Spin Master's arguments, they are unavailing. Spin Master essentially argues that even though Spin Master's competitors paid Rehco a five percent royalty applied to gross revenues to use the '866 patented technology in specific items it was improper for the jury to (1) consider such evidence, and (2) use it in arriving at its damages verdict. This position is absurd and contrary to controlling Federal Circuit precedent.

9

1.      **The royalty base was properly apportioned.**

As a threshold matter, apportionment may be addressed via an apportioned royalty base, an apportioned royalty rate, or a combination of both. *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). There is no requirement that both the rate and base be apportioned. *Id.* In the present case, Rehco presented evidence of Rehco licenses to the '866 patent where the licensees voluntarily agreed to pay a five percent royalty rate applied to gross revenues from sales of covered products (the royalty base) to license the '866 patent. *See* Tr. Exs. 190, 201. In other words, other licensees of the '866 patent used gross revenues as the royalty base and five percent as the royalty rate to license the '866 patent. *Id.*; *see Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (holding that where there is evidence concerning actual or negotiated license rates for the patent-in-suit there is "built in apportionment") (hereinafter "*CSIRO*"). In light of this, it was entirely appropriate for the jury to hear Spin Master's gross revenues from sales of the accused products so that the jury had the information necessary to properly consider Rehco's license agreements for the '866 patent.[15]

In addition, the Federal Circuit has held that apportionment of a royalty base is not required where the patent claim is directed to the entire product. *Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC,* 879 F.3d 1332, 1353 (Fed. Cir. 2018) ("Using the accused lawnmower sales as the royalty base is particularly appropriate in this case because the asserted claim is, in fact, directed to the lawnmower as a whole."). In the present case, the

---

[15] Rehco also presented the jury with Spin Master's net sales from the accused products, the number of units of accused products sold, as well as other comparable licenses based on net sales and units sold. The jury was correctly presented with the information and, based on this information, rendered its verdict, finding that five percent of Spin Master's gross revenues from the accused products was the appropriate damages award. The jury's judgment in this regard should not be disturbed.

asserted claims of the '866 patent are directed to "vehicle[s] having a means for propelling in a vertical direction" (*e.g.*, flying toys). Spin Master's accused products are all "vehicle[s] having a means for propelling in a vertical direction" (*i.e.*, flying toys) and are the smallest saleable patent-practicing unit. Therefore, no apportionment of the royalty base is required.[16] However, even if apportionment were an issue, it is a question for the jury to resolve based on the evidence presented, which they did. *See Elbit Systems Land and C4I Ltd. v. Hughes Network Systems, LLC,* No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618, at *16 (E.D. Tex. June 20, 2017).

Using Spin Master's revenues as the royalty base also comports with the smallest salable patent-practicing unit (SSPPU) principle, which provides that "where a damages model apportions from a royalty base, the model should use the smallest salable patent practicing unit as the base." *CSIRO*, 809 F.3d at 1302. Spin Master's reliance on *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299 (Fed. Cir. 2018) to argue that the SSPPU principle does not warrant introduction of Spin Master's revenue information is incorrect. SMT Br., pp. 11-12. In *Finjan*, the Federal Circuit unambiguously stated at the beginning of its analysis that, "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." 879 F.3d at 1309. In the present case, the asserted claims (*i.e.,* '866 patent, claim 1) is directed to the entire accused product.

---

[16] Spin Master's reliance on the Federal Circuit's 2014 decision in *Virnetx, Inc. v. Cisco Systems, Inc.,* is misplaced. In *Virnetx*, the Federal Circuit stated that "when claims are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based on the value of the multi-component product." 767 F.3d 1308, 1326-27 (Fed. Cir. 2014). First, this statement is in the context of the entire market value rule. Second, the claims in the present case are not directed to "an individual component of a multi-component product. Rather, they are directed to Spin Master's accused products as a whole (*i.e.,* "vehicle[s] having a means for propelling in a vertical direction" (*e.g.,* flying toys). *See* '866 patent, claim 1.

Finally, under the entire market value rule (EMV), using a product's entire market value as the base is appropriate where the patented feature is (1) the sole driver of customer demand, or (2) substantially creates the value of the component parts. *CSIRO*, 809 F.3d at 1302; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018). Whether or not the EMV applies is a question for the jury. *See e.g., Cave Consulting Group, Inc. v. Truven Health Analytics Inc.,* No. 15-cv-02177, 2017 WL 4772348, at *4 (N.D. Cal. Oct. 23, 2017). Notably, Spin Master's discussion of the EMV ignores the fact that the EMV is appropriate where the patented feature(s) substantially create the value of the component parts. *Id*.; SMT Br., pp. 9-11. In other words, Spin Master's argument only focuses on the first part of the two-part disjunctive test for application of the EMV. In the present case, Rehco presented evidence from which a jury could conclude that the patented technology substantially created the value of the component parts of the accused products. Tr. Exs. 23, 25, 26, 39, 49, 50, 86, 87, 93, 99, 100, 101, 212; TT 130:9-133:10, 134:8-135:18, 137:15-21, 174:8-176:12, 178:4-10, 197:20-200:22, 269:15-270:16; Wong Depo. 126:9-127:2; Exhibit A, Chance Depo. 22:10-16 (Tr. Ex. 353).[17]

In sum, the Court did not err in allowing the jury to hear evidence of Spin Master's revenues from sales of the accused products. The fact that Spin Master is unhappy the jury chose to use this information as the royalty base in determining damages does not render the information inadmissible.

---

[17] The fact that Spin Master presented evidence that it believes demonstrates other features of the accused products created value for the accused products does not matter. On a motion for JMOL the Court must disregard all evidence favorable to Spin Master. *Reeves,* 530 U.S. at 151. Further, Spin Master's arguments in this regard are not a basis for granting JMOL but are merely Spin Master attempting to substitute its judgment and weighing of the evidence for that of the jury, which is improper. *See Schandelmeier-Bartels,* 634 F.3d at 376.

2.      **The royalty rate was properly apportioned and there was sufficient evidence of license comparability.**

As discussed in the preceding section, the jury awarded Rehco five percent of Spin Master's gross revenues from sales of the accused products.  Verdict (Dkt. 286); Tr. Exs. 190, 201, 215.  This is exactly what other willing licensees, and competitors of Spin Master, have paid for use of the '866 patented technology.  *Id*.  The Federal Circuit has held that where there is evidence concerning the actual or negotiated license rates for a patent-in-suit, such rates have "built in apportionment."  *CSIRO,* 809 F.3d at 1303.  In other words, the jury's award of a five percent rate applied to gross revenues represents an apportioned rate.

Spin Master's reliance on the district court decision in *Mondis Tech. Ltd. v. LG Electronics,* 407 F.Supp.3d 482 (D. N.J. 2019) is misplaced.  In *Mondis*, the district court distinguished the Federal Circuit's holding in *CSIRO* because in *Mondis,* "the starting point was a set of licenses not limited to the [patent-in-suit]."  *Id.* at 491-92.  In the present case, Rehco did not present licenses to some broad set of potentially unrelated patents.  Rather, the licenses presented, and the testimony concerning the same, were for licensing the '866 patent (*i.e.,* the patent-in-suit), just as in *CSIRO.  See* Tr. Exs. 190, 191, 198, 201; TT 570:3-580:11; *see also CSIRO,* 809 F.3d at 1303.  The fact that in *CSIRO* the parties had been negotiating a license, as opposed to a third-party, does not alter the Federal Circuit's holding that when a license is for the patent-in-suit, and not other patents, apportionment is built-in.  *Id*.  Further, while Spin Master argues that Rehco was licensing "an item," and not the '866 patent, this is simply untrue.  *See* Tr. Exs. 190, 191, 198, 201; TT 570:3-580:11.  Steve Rehkemper testified that Rehco had nothing to do with developing the items identified in the license agreements and the only thing Rehco was licensing was the '866 patented technology.  *Id*.  Rather, the "item" language found in the licenses acts solely to provide a limitation on the products in which the licensee can use the '866 patent.  *Id*.; *see also* Tr. Exs. 190, 191, 198, 201.

13

Spin Master's remaining arguments go to the weight to be afforded Rehco's prior licenses, not their admissibility, both of which are improper questions on a motion for JMOL.[18] The Federal Circuit has repeatedly recognized that prior licenses "are almost never perfectly analogous to the infringement action" and "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson,* 773 F.3d at 1227-28; *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,* 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of … license agreements as well as any failure on the part of [plaintiff's] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").[19]  In this case, Spin Master had a full and fair opportunity to cross-examine Steve Rehkemper regarding Rehco's prior licenses, and the jury heard and considered the points made by Spin Master. *See Virnetx,* 767 F.3d at 1330 ("Moreover, all of the other differences Apple complains of were presented to the jury, allowing the jury to fully evaluate the relevance of the licenses.").  The fact that the jury disagreed with Spin Master is not a basis for granting JMOL.  As such, Spin Master's motion should be denied, and the jury's patent damages award should stand.

---

[18] For example, the fact that Rehco's prior licenses were entered into after the hypothetical negotiation date between Rehco and Spin Master is a classic example of an issue that goes to the weight to be afforded the evidence, not its admissibility. *See e.g., Papst Licensing GmbH & Co., KG v. Samsung Electronics Co., Ltd.*, 2019 WL 4140821, at *25-26 (E.D. Tex. Aug. 30, 2019) (finding that five litigation lump-sum settlement licenses, entered into up to ten years after the hypothetical negotiation, were admissible).

[19] Spin Master's contention that the Five Below license (Tr. Ex. 190) was entered into under the threat of litigation is false and a misrepresentation of the record.  SMT Br., p. 15 (citing TT 593:13-21).  The testimony cited by Spin Master states that Mr. Rehkemper sent Five Below a letter. *Id.*  On direct examination, Mr. Rehkemper was explicitly asked if Rehco ever threatened to sue Five Below to get them to enter into the license, and he unequivocally answered no.  TT 571:21-23.  Spin Master's blatant misrepresentations to this Court should not be tolerated.

**C. There Was a Legally Sufficient Evidentiary Basis for the Jury's Finding of Willful Infringement.**

The Supreme Court's decision in *Halo* did not "chang[e] the established law that the factual components of the willfulness question should be resolved by the jury." *WBIP, LLC v. Kohler Corp.,* 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see also Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classic jury question of intent. When trial is had to a jury, the issue should be decided by the jury."). Rather, post-*Halo* "the entire willfulness determination is to be decided by the jury." *Exmark,* 879 F.3d at 1353. Without any substantive argument or evidence, Spin Master asks the Court to wrest the factual issue of willfulness from the jury and set aside its verdict.

Contrary to Spin Master's contention, Rehco presented much more than Spin Master's mere knowledge of the '866 patent to the jury. As discussed below, Rehco presented the jury with evidence that supported all five factors of the Court's jury instruction on willful infringement. As such, there was a legally sufficient evidentiary basis for the jury's willful infringement finding and Spin Master's request should be denied.

**1. There was evidence that Spin Master did not make a good-faith effort to avoid infringing the '866 patent and did not attempt to design around it.**

Spin Master took no remedial action or effort to avoid infringing the '866 patent, including any attempt to design around the '866 patent. Rather, Spin Master continued to develop and launch infringing products during the pendency of this lawsuit. TT 67:12-68:1. For example, the Atmosphere and Flutterbye Fairy products were released by Spin Master after this case was filed. *Id.* Spin Master continued to sell the Atmosphere and Flutterbye Fairy products through 2017 and the Vectron Wave through March 2018. *Id.* There was no evidence that Spin Master took any

15

remedial action after learning of the '866 patent, which relates to Factor 4 of the Court's willful infringement instruction and supports the jury's verdict.[20]

### 2. There was evidence that Spin Master tried to cover up its infringement.

The evidence showed that Spin Master tried to cover up its infringement. Prior to filing this lawsuit, Rehco tried for years to get to the bottom of how the Vectron Wave operated and whether there was infringement. *See, e.g.,* Tr. Exs. 114, 117. Spin Master refused to provide Rehco the information it sought. The bullet points below summarize correspondence presented to the jury concerning this issue.

- On May 3, 2011, Rehco's in-house counsel, Scott Lloyd, requested that Spin Master's in-house counsel, Chris Harrs, "provide the previous Wave v. the '866 claim analysis and the contact information for the patent attorney that put it together." (Tr. Ex. 117);

- As a result of this correspondence, on May 3, 2011, Mr. Harrs tells Mr. Dermer at Spin Master: "Please don't respond." (*Id.*);

- Following this, on May 19, 2011, Mr. Harrs responded to Mr. Lloyd, stating: "I want to make clear that I do not recall ever saying some time ago that we did a claims analysis" and "In terms of your patent, it is not advisable for me to get into a detailed discussion." (*Id.*);

- On May 25, 2011, Mr. Lloyd responded stating: "I understand you're hesitant to get into a detailed patent discussion. I'm ok with focusing on the operation of the Wave." (Tr. Ex. 114). He then presented follow-up questions and ended by stating: "I'm working with our most senior electrical engineer here who is very experienced with IR transmitters/receivers and the supporting operating software. Are you working with an equivalent on your end? If so, would it be OK for them to talk to one another?" (*Id.*);

---

[20] Spin Master's reliance on *TecSec, Inc. v. Adobe, Inc.*, No. 1:10-cv-115, 2019 WL 1233882 (E.D. Var. 14, 2019) is misplaced. In *TecSec,* the willful infringement claim was based solely on the accused infringer's post-suit conduct. *Id*. at *2. In other words, the there was no evidence that the accused infringer was even aware of the patent-in-suit before the lawsuit was brought. In contrast, in the present case Spin Master was aware of Rehco's product and the '866 patent for years before this lawsuit was brough and before Spin Master developed the accused products. *See infra* Sections III.C.2 and III.C.3. In addition, Spin Master not only continued to sell the Vectron Wave after this suit was filed, but launched new infringing products, including the Atmosphere and Flutterbye Fairy. TT 67:12-68:1.

- On July 20, 2011, Mr. Harrs references ToyTec and says, "I am not at liberty to give you a road map to how our IR technology works," and "I am loath to have our engineers enter into a lengthy discussion." (Tr. Ex. 114);

- Mr. Lloyd then reached out to ToyTec. (Tr. Ex. 115);

- In response, on August 30, 2012, Mr. Harrs instructs Mr. Lloyd to direct all correspondence to him, not ToyTec. (Tr. Ex. 117);[21]

- On September 6, 2012, Mr. Lloyd followed up stating: "Per the many emails and our correspondence following the portion of the email chain you pasted below, you never provided sufficient information to determine whether there was an issue with regard to the Vectron Wave and Rehco's patent." (Tr. Ex. 117);

- Mr. Harrs responded by stating: "To get into further dialogue is just not appropriate given your allegation that we infringe." (*Id.*).

The above conduct clearly evidences a concerted effort by Spin Master to conceal its misconduct, including Spin Master's infringement. Rehco requested additional information concerning the alleged "claim analysis" performed by Spin Master's external patent attorney – Spin Master refused. Rehco requested information on the functionality of the Vectron Wave – Spin Master refused. Rehco requested that the engineers be permitted to talk directly to get to the bottom of the dispute – Spin Master refused. This evidence relates to Factor 5 of the Court's willful infringement instruction and supports the jury's verdict.

### 3. There was evidence that Spin Master did not reasonably believe it did not infringe or that the '866 patent was invalid.

There was evidence that Spin Master did not reasonably believe it did not infringe or that the patent was invalid. With respect to validity, Spin Master and Rehco corresponded for years regarding the '866 patent prior to the filing of this matter in March 2013. *See e.g.,* Tr. Exs. 109, 111, 1114, 115, 117, 205. In all that correspondence, Spin Master never articulated a single

---

[21] Spin Master cannot have it both ways. Spin Master contended it could not share the information because of ToyTec, but then instructed ToyTec not to respond to Rehco's inquiries and instructed Rehco to address all future correspondence on this issue to Spin Master. *See* Tr. Exs. 114, 115, and 117.

invalidity argument. *Id.* At trial, Spin Master's only invalidity argument was based on U.S. Patent No. 4,664,340 to Jackson. Tr. Ex. 180. Jackson is directed to a tethered product for spraying crops. Trans. 794:23-796:2; Tr. Ex. 180, Figs. 1, 4, 5, 1:28-37, 1:55-59, 1:63-2:12, 6:15-39. Further, at trial Spin Master's expert, Dr. Janét, agreed that Jackson did not explicitly disclose all the elements of the '866 patent, claim 1. Trans. 800:23-801:18; 803:13-17. Spin Master also failed to present any evidence that Jackson discloses the "predefined" speed limitations, which per the Court's construction must be "programmed on circuit board 136 in advance of operation of the vehicle." *See* Trans. 753:15-759:14. Rather, Dr. Janét merely testified that Jackson discloses a "predetermined height" being programmed into the microprocessor. Trans. 754:21-755:4, 757:2-24.[22]

With respect to infringement, the non-infringement arguments articulated by Spin Master's in-house counsel, Mr. Harrs, were directly contradicted by Spin Master's Director of Engineering, T.W. Wong.[23] *Compare* Tr. Exs. 109, 114, 117 *with* Wong Depo. 30:2-13, 76:20-77:22. Further, as discussed above, Spin Master consistently refused to provide Rehco with information about the operation of the Vectron Wave in an effort to conceal its infringement. This is because Spin Master did not reasonably believe it was not infringing.[24] This evidence relates to Factor 3 of the Court's willful infringement instruction and supports the jury's verdict.

---

[22] This is consistent with the Court's summary judgment ruling in which the Court stated: "The relevant predetermination in *Jackson* would seem to be height, not speed, *see* [204-12], and, as a result, the Court is not persuaded that *Jackson* renders the '866 invalid." Dkt. 256, p. 18.

[23] Spin Master contends that code review is necessary to determine infringement, yet Spin Master presented no evidence or argument that Mr. Harrs' statements related to non-infringement were based on a review of the source code for the accused products or any other technical information about the operation of the accused products. Mr. Harrs was present during the majority of the trial. Spin Master could have had Mr. Harrs testify and elucidate on the basis for his statements and chose not to.

[24] Spin Master's reliance on *Loggerhead Tools, LLC v. Sears Holdings Corp.,* 2016 WL 6778881, at *2 (N.D. Ill. Nov. 15, 2016) for the proposition that consulting with a patent lawyer will insulate a company from willful infringement is incorrect. In *Loggerhead*, the accused infringer consulted with a patent attorney on several occasions throughout the design process of

18

**4.      There was evidence that Spin Master did not act consistently with the standards of behavior for its industry.**

At trial, evidence was presented demonstrating that Spin Master did not act consistently with the standards of behavior for the industry.  For example, Mr. Dermer testified that Spin Master's standard protocol is to reward toy inventors for their inventions.  TT 436:20-24.  This is consistent with other toy companies voluntarily taking licenses to the '866 patent when they wanted to implement Rehco's technology disclosed in the '866 patent.  *See* TT 570:13-572:12 (testimony regarding Tr. Ex 190),  572:18-574:19, 577:23-578:2 (testimony regarding Tr. Ex. 191), 574:25-576:19, 577:8-577:22, 578:6-10 (testimony regarding Tr. Ex. 198), 578:15-580:11 (testimony regarding Tr. Ex. 201).  In other words, the standard of behavior in the toy industry is to pay patentees a royalty for the use of their technology.

As discussed throughout this brief, Spin Master did not act consistently with this standard of behavior.  Rather, Spin Master sought to conceal its infringement in an effort to avoid paying royalties on the '866 patent.  This was highlighted by statements by Spin Master's Senior Director of Brand Development, Mr. Conor Forkan, who, while trying to reduce the royalty it was paying to ToyTec, stated:

---

the accused product and obtained a formal noninfringement opinion.  *Id.* at *2.  Further, in *Loggerhead* the court acknowledged that "the incorrect legal standard was applied" because it was originally decided prior to the Supreme Court's decision in *Halo*.  *Id*.  In the present case, Mr. Harrs indicated in one email that Spin Master had its "external patent attorney" confer with Spin Master's engineers.  Tr. Ex. 109.  Spin Master then for years refused to provide to Rehco, or produce in this litigation, attendant analysis, opinion, or other information despite Rehco's repeated requests.  *See supra* Section III.B.2.  Further, Spin Master presented no evidence that any attorneys were involved in the design process of the accused products to ensure they did not infringe the '866 patent.

> You did not. In this case, you didn't actually even invent IR
> ranging, we had seen it before as you know from rehkemper and other it
> was even in the market long before we ever even met. You did tell me
> at the time that your system was patented and protectable.
>
> It was only when RK approached you that you informed me you were in
> fact not willing to protect it.
>

Tr. Ex. 205, p. 1 (SMT0012519). In other words, Spin Master knew it was using Rehco's patented

technology, refused to pay Rehco a royalty on the '866 patent, but then used the fact that Rehco

invented the technology to drive down the royalty it was paying Toytec. This evidence relates to

Factor 1 of the Court's willful infringement instruction and supports the jury's verdict.

### 5. There was Evidence that Spin Master copied a Rehco product that is covered by the '866 patent.

Finally, there was at least circumstantial evidence that Spin Master intentionally copied a

Rehco product covered by the '866 patent. Rehco presented its idea and invention to Spin

Master on three occasions before the Vectron Wave was launched in March 2010. TT 67:8-9;

Tr. Exs. 102, 103, 105, 107, 108. In addition, Spin Master had knowledge of the '866 patent for

over a year prior to the launch of the Vectron Wave. TT 567:20-568:14; Tr. Ex. 218, Resp. Rog.

7. Further, Spin Master played an integral role in the development of the Vectron Wave,

Atmosphere, and Flutterbye Fairy while it had knowledge of Rehco's idea and invention. Tr.

Exs. 32, 36, 208, 209, 210, 211.

Relying on *MercExchange, L.L.C. v. eBay, Inc.*, 275 F.Supp.2d 695, 720 (E.D. Va. 2003),

Spin Master contends that, because it did not learn anything from Rehco's prototypes, this

evidence cannot support an inference of copying. SMT Br., pp. 17-18. This is incorrect. In

*MercExchange,* the court denied the accused infringer's motion for JMOL on willfulness despite

holding that the defendant had no guidance from which to copy the patented design and applying

the higher pre-*Halo* clear and convincing evidentiary burden. *Id*. at 701-02. In other words,

20

even absent any evidence that the accused infringer learned anything from the patentee's product, the court in *Mercexhange* denied the accused infringers motion for JMOL.[25]

Spin Master's reliance on *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) is also misplaced. The discussion of "copying" in *Amazon.com* was in the context of secondary considerations of non-obviousness, not willfulness. Further, *Amazon.com* was decided years before the Supreme Court's decision in *Halo,* which departed from the Federal Circuit's prior rigid framework for determining willful infringement. *See generally Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923 (2016). Setting this aside, the Federal Circuit has held that while generally a nexus must be shown between the evidence and the claimed features of the invention, "where there is evidence of actual copying efforts, that evidence is always relevant." *See Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138 (Fed. Cir. 2019).

In addition, Spin Master was not up-front with Rehco. For example, Spin Master feigned interest in Rehco's idea and invention despite actually not being interested. *Compare* Tr. Exs. 102, 103, 105, 107, and 108 *with* Trans. 426:10-428:10 (Dermer). Based on this feigned interest, Rehco provided Spin Master with a fully functional auto-hover prototype, booklet, and DVD. Tr. Exs. 107, 108. In addition, Spin Master falsely represented to Rehco that ToyTec had also presented Spin Master with a finished auto-hover product. Trans. 567:20-568:14; Tr. Ex. 106.[26]

---

[25] Spin Master's reliance on *VNUS Medical Tech., Inc. v. Diomed Holdings, Inc.*, 527 F.Supp.2d 1072 (N.D. Cal. 2007) is also misplaced. *VNUA Medical* involved a pre-*Halo* decision on summary judgment. 527 F.Supp.2d at 1074. In support of its finding of no willful infringement, the court found that there was insufficient evidence that the accused infringer was even aware of the patentee's product so, therefore, there was insufficient evidence the accused infringer had copied the patentee's product. *Id*. In contrast, in this case there was a jury verdict finding willful infringement and evidence was presented that Spin Master was aware of Rehco's product and the '866 patent before it developed the accused products. *See supra* Sections III.B.2 and 3.

[26] Notably, what ToyTec presented was a mock-up on a Reflex helicopter, a product that Spin Master was paying Rehco royalties on. Further, in Tr. Ex. 106, Spin Master's employee, Conor Forkan, notes that what ToyTec presented was "similar to an item RK presented years ago. The user puts their hand under the vectron to control it." Tr. Ex. 106. Mr. Forkan goes on to identify the real reason Spin Master went with ToyTec – "their specialty is coming up with the cheapest

21

However, as of the May 5, 2008 meeting between Spin Master and Rehco, there was no Vectron Wave. *Id.* Rather, it was not until July 29, 2008, that Spin Master even received approval from management to begin work on the Vectron Wave. Tr. Ex. 210; Trans. 332:4-18 (Dermer).

Following that approval, and after Rehco had shared its idea and invention with Spin Master, Spin Master worked with ToyTec to develop the Vectron Wave. Trans. 332:19-333:16 (Dermer); Tr. Exs. 32, 36, 208, 209, 210, 211. In other words, with knowledge of Rehco's invention, Spin Master helped ToyTec develop what ultimately became the Vectron Wave. *Id*. For example, in April 2009, after Spin Master already had access to Rehco's invention for years, Spin Master's engineers (Stanley Wong, CW Yuen, and TW Wong) corresponded via email regarding the "working principle" behind the Vectron Wave, which closely tracks the language of '866 patent, claim 1 (*i.e.,* when at low altitude – all signal returned --> **Vectron wave climbs up**; when at high altitude – none of the signal returned --> **Vectron wave starts to go down**. *Compare* Tr. Exs. 36, 211 (emphasis in original) *with* '866 patent, claim 1. This is evidence of copying that supports the jury's willful infringement finding. *See Georgetown Rail Equip. Co. v. Holland LP*, No. 6:13-cv-366, 2016 WL 3346084, at *17 (E.D. Tex. June 16, 2016), *affirmed at* 867 F.3d 1229 (Fed. Cir. 2017) (finding that circumstantial evidence of copying supported willful infringement finding and enhanced damages where the patent owner disclosed its product to the accused infringer on two occasions, noting that an "infringer can copy another person's patented invention even though the infringer directs another to build the copy"). This evidence relates to Factor 2 of the Court's willful infringement instruction and supports the jury's verdict.

---

way to do things" and "[t]heir innovation is cost; (a recurring theme) it's a much cheaper way to do it." *Id*.

In sum, evidence was presented that supports all five willfulness factors from the Court's willfulness instruction. This is a legally sufficient evidentiary basis for the jury's willful infringement finding and the same should be upheld.

**D.      There Was a Legally Sufficient Evidentiary Basis for the Jury's Finding That Spin Master Breached the Helicopter Agreement.**

The Helicopter Agreement (Tr. Exs. 1, 2, and 3) as well as the Havoc Heli (Tr. Ex. 7) were entered into evidence without objection. This evidence alone provided a legally sufficient evidentiary basis for a jury to reasonably determine, as they did, that Spin Master breached the Helicopter Agreement.[27]  In other words, the jury considered the Item descriptions in the Helicopter Agreement, the improvement / modification clause of the Helicopter Agreement (Section 1.c.), and the Havoc Heli, and determined, rightfully, that Spin Master breached the Helicopter Agreement. *See* Verdict (Dkt. 286). Spin Master's contention that no rational jury could decide in Rehco's favor based on the evidence presented is false. Twelve rational jurors did decide in Rehco's favor, and Spin Master has not presented any argument that warrants disturbing this verdict. The fact that the jury ultimately sided with Rehco instead of Spin Master does not support entry of JMOL.

Spin Master's arguments about evidence it contends does not support the jury's verdict are irrelevant. On a motion for JMOL, the Court must disregard all evidence favorable to Spin Master that the jury was not required to believe and construe the facts strictly in favor of Rehco.

---

[27] Spin Master's motion argues that Rehco was required to present testimony, purportedly expert testimony, comparing the language of the Helicopter Agreement to the Havoc Heli. *See e.g.,* SMT Br., p. 20 (Dkt. 299). First, the jury, not Rehco, was tasked with determining whether or not the Havoc Heli fell within the scope of the Helicopter Agreement, which they did. Second, Spin Master previously sought to exclude such "comparison" testimony, arguing that extrinsic evidence regarding Rehco's breach claim should not be permitted, and all that is necessary to decide the claim is the Helicopter Agreement and the Havoc Heli. *See* Mot. Strike J. Rehkemper and M. Hirtle (Dkt. 147).

*See Schandelmeier-Bartels,* 634 F.3d at 376; *Reeves,* 530 U.S. at 151. Nonetheless, even if considered, Spin Master's arguments do not warrant disturbing the jury's verdict.

For example, the fact that Mr. Jeff Rehkemper testified that the Havoc Heli has stacked rotors, a pivotal connection between the propeller and the drive shaft with the leading edge of the rotor above the pivot point, and does not have safety guards, does not warrant altering the jury's verdict. Spin Master fails to explain why it should. If anything, this is circumstantial evidence that the Havoc Heli is an improvement and/or modification of one or more of the Item descriptions in the Helicopter Agreement.[28]

Spin Master's contention that "Rehco offered no evidence linking its helicopter patents and the Helicopter Agreement" is incorrect. SMT Br., p. 23. Mr. Dermer testified that the Sky Patrol (Tr. Ex. 5) was the first Item described in the Helicopter Agreement. TT 317:15-22. Mr. Rehkemper testified that Rehco's `395 patent is for the Sky Patrol (*i.e.,* the first Item described in the Helicopter Agreement). TT 492:19-493:2; Tr. Ex. 181. Spin Master agrees that U.S. Patent No. 7,815,482 ("the '482 patent") to Alexander Van de Rostyne (Tr. Ex. 272) covers the Havoc Heli. SMT Br., p. 23. Further, the evidence showed that the '482 patent (*i.e.,* the Havoc Heli) cited Rehco's patents, including the '395 patent, as prior art and represented an improvement or modification over the '395 patent (*i.e.,* the Sky Patrol / the first Item description). TT 515:17-516:1, 558:25-559:20; Tr. Exs. 181, 272. At a minimum, this is circumstantial evidence, that was admitted without objection, that supports the jury's verdict.

Rehco also presented evidence that the Sky Patrol was on sale for years before the Havoc Heli was released and was well known throughout the industry. TT 555:3-12. In addition, Mr. Jeff Rehkemper testified that when developing new toys one of the first things inventors do is

---

[28] Contrary to Spin Master's assertion, Rehco did not argue that "any toy helicopter would fall within the modifications clause." SMT Br., p. 22. Rehco argued that the Havoc Heli fell within the "modifications clause" (Section 1.c), and the jury agreed. Verdict (Dkt. 286).

survey what is already in the market to make sure they are improving on what is pre-existing. TT 522:2-13. This is additional circumstantial evidence, that was admitted without objection, that supports the jury's verdict.

Spin Master also contends that the jury's verdict is contrary to the plain language of the Helicopter Agreement. However, Spin Master never explains why. For example, Spin Master argues that Section 19.c. requires that any additional products be added to the definition of "Item" via "execution of an acknowledgment by both Parties that expressly refers to this Agreement." SMT Br., p. 22. First, the jury considered, and implicitly rejected, this argument in reaching its verdict. Second, Section 19.c. merely indicates that the parties can add additional products to the Item description. Adopting Spin Master's theory that only products specifically identified in the Item descriptions are covered by the Helicopter Agreement vitiates the modifications clause (Section 1.c), which was specifically negotiated for by Rehco and agreed to by Spin Master. TT 549:5-11, 553:17-554:14; Tr. Exs. 1, 2, 3.

In sum, Rehco presented a legally sufficient evidentiary basis from which a rational jury could, and did, find that Spin Master breached the Helicopter Agreement. The fact that Spin Master does not like the result is not a basis to overturn the jury's verdict. As such, Spin Master's motion for JMOL should be denied.

## IV.    CONCLUSION

Based on the foregoing, Spin Master's Motion for JMOL should be denied in its entirety, and Final Judgment should be entered in accord with the jury's verdict and the additional relief sought in Rehco's Motion for Entry of Final Judgment (Dkt. 298).

DATED: February 13, 2020          Respectfully submitted,

/s/ *Timothy E. Grochocinski*
Timothy E. Grochocinski
tim@nbafirm.com
Joseph P. Oldaker
joseph@nbafirm.com
NELSON BUMGARDNER ALBRITTON, P.C.
15020 S. Ravinia Ave., Suite 29
Orland Park, Illinois 60462
P. 708.675.1975
F. 708.675.1786

Eric M. Albritton
ema@nbafirm.com
NELSON BUMGARDNER ALBRITTON, P.C.
3131 W. 7th Street, Suite 300
Fort Worth, Texas 76107
P. 817-377-9111

*COUNSEL FOR PLAINTIFF*
*REHCO, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 13, 2020 a copy of the foregoing was served on counsel for Defendant via the Court's CM/ECF system.

/s/ *Timothy E. Grochocinski*

26